Calvin Roderick CARMICHAEL, Plaintiff-Appellant,

v.

BIRMINGHAM SAW WORKS, Defendant-Appellee.

No. 81–7815.

United States Court of Appeals, Eleventh Circuit.

Aug. 9, 1984.

Robert L. Wiggins, Jr., Birmingham, Ala., for plaintiff-appellant.

Odom, May & Debuys, James W. May, Birmingham, Ala., for defendant-appellee.

Before TJOFLAT and FAY, Circuit Judges, and WISDOM *, Senior Circuit Judge.

WISDOM, Senior Circuit Judge:

In this Title VII case, the trial court found that the defendant employer had not intentionally discriminated against the black plaintiff employee in hiring, promotions, or wage increases. The trial court did find a discriminatory initial wage disparity, and awarded back pay and attorney fees. We affirm the trial court's denial of injunctive relief, but we find errors of law and fact that require us to vacate and

---

* Honorable John Minor Wisdom, U.S. Circuit Judge for the Fifth Circuit, sitting by designa- tion.

remand for further proceedings on the hiring, promotion, and wage claims, as well as on the issue of attorney fees.

## I. *Facts*

The defendant, Birmingham Saw Works, is a family-run business with about 45 employees engaged in the making and repair of saws of all kinds. The plaintiff, Calvin Carmichael, heard by word of mouth that the defendant had work available, and applied for work in November 1975. Elmore Thuston, Vice President of the Saw Works, told the plaintiff that no positions were open. The plaintiff said he needed work, and Thuston agreed to hire him as a part-time janitor and stockman, on the understanding that he would move into a full-time position when one became open. In January 1976 the plaintiff was given a full-time position in the repair shop, where he remained until he resigned in August 1978. The plaintiff was paid the minimum wage ($2.10/hr. in 1975, $2.30/hr. in 1976) until April 1976; thereafter he received raises approximately every six months.

Carmichael first filed a charge with the Equal Employment Opportunity Commission in April 1976. In November 1978, the EEOC issued Carmichael a right-to-sue letter. He filed this suit in February 1979, alleging disparate treatment in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e to 2000e–17 (1976 & Supp. V 1981). The case was tried by the court on January 27, 1981; the court rendered its decision on April 8. The court rejected the plaintiff's allegations of discrimination in hiring and promotions. The court found that the defendant did violate Title VII by starting the plaintiff in the repair shop at a lower wage than that paid to whites. The court recognized that the plaintiff was paid less than whites with comparable experience throughout his employment, but stated that "later raises given to plaintiff were not discriminatory and that the only wage discrimination results from the original disparity", which the court found to be 20 cents per hour. On April 29, after supplemental proceedings to determine the number of hours the plaintiff worked for de-

fendant, the court awarded damages of 20 cents per hour for 6057.5 hours, or $1211.50, plus interest. In September, after a hearing, the court awarded attorney fees of $5400, based on a rate of $50 per hour for 90 hours. Both parties appealed, but the defendant later dismissed its appeal.

## II. *Standard of Review*

■ The plaintiff has framed his attack on the trial court's findings largely in terms of whether the plaintiff made out a prima facie case of discrimination. We are mindful, however, of the Supreme Court's admonition that when a disparate treatment case is fully tried, as this one was, both the trial and the appellate courts should proceed directly to the "ultimate question" in the case: "whether the defendant intentionally discriminated against the plaintiff". *United States Postal Service Board of Governors v. Aikens*, 1983, 460 U.S. 711, 714–15, 103 S.Ct. 1478, 1481–82, 75 L.Ed.2d 403, 409–10; *see also Lehman v. Trout*, 1984, —— U.S. ——, 104 S.Ct. 1404, 79 L.Ed.2d 732. Intentional discrimination is an issue of fact. This Court may reverse a district court's finding of no intentional discrimination only if that finding is clearly erroneous, or is based on clearly erroneous subsidiary findings of fact or on a mistaken view of the law. *Pullman-Standard v. Swint*, 1982, 456 U.S. 273, 102 S.Ct. 1781, 72 L.Ed.2d 66; *Lincoln v. Board of Regents*, 11 Cir.1983, 697 F.2d 928, 939–40, *cert. denied*, 1983, —— U.S. ——, 104 S.Ct. 97, 78 L.Ed.2d 102. In such circumstances the appellate court must remand for further proceedings unless the record permits only one resolution of the case. *Pullman-Standard*, 456 U.S. at 291–92, 102 S.Ct. at 1791–92.

Accordingly, our inquiry in this case is whether the district court was clearly erroneous in finding no intentional discrimination in hiring, promotions, and raises. In performing this inquiry, however, it is useful to employ the evidentiary framework first developed in *McDonnell Douglas Corp. v. Green*, 1973, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668. Under that frame-

work, an employee must first present a prima facie case of discrimination, by eliminating "the most common nondiscriminatory reasons for the plaintiff's rejection". *Texas Department of Community Affairs v. Burdine*, 1981, 450 U.S. 248, 253–54, 101 S.Ct. 1089, 1094, 67 L.Ed.2d 207. The employer must then "articulate some legitimate, nondiscriminatory reason for the employee's rejection". *Id.*, 450 U.S. at 253, 101 S.Ct. at 1093. The employer does not have the burden of *proving* these nondiscriminatory reasons, but the employer must raise "a genuine issue of fact" by means of admissible evidence "legally sufficient to justify a judgment for defendant". *Id.*, 450 U.S. at 254–55, 255 n. 9, 257–58, 101 S.Ct. at 1094 n. 9, 1096; *Lincoln*, 697 F.2d at 937. If the employer does so, the plaintiff may challenge the employer's defense as pretextual, or he may present evidence to show that "a discriminatory reason more likely motivated the employer". *Aikens*, 460 U.S. at 716, 103 S.Ct. at 1482, 75 L.Ed.2d at 410–11. In either case, the court moves on to the ultimate question of discriminatory intent, and the employee has the burden of proof. *Id.* If the employer does *not* meet its burden of articulation, however, the court should decide in favor of the employee. *Burdine*, 450 U.S. at 254, 101 S.Ct. at 1094; *Harris v. Birmingham Board of Education*, 11 Cir.1983, 712 F.2d 1377, 1383–84. This result follows because the prima facie case creates only a "rebuttable presumption" of discrimination. *Burdine*, 450 U.S. at 254 n. 7, 101 S.Ct. at 1094 n. 7; *see* Mendez, *Presumptions of Discriminatory Motive in Title VII Disparate Treatment Cases*, 32 Stan.L.Rev. 1129 (1980). "The prima facie case method established in *McDonnell Douglas* was 'never intended to be rigid, mechanistic, or ritualistic.' " *Aikens*, 460 U.S. at 715, 103 S.Ct. at 1482, 75 L.Ed.2d at 410, quoting *Furnco Construction Corp. v. Waters*, 1978, 438 U.S. 567, 577, 98 S.Ct. 2943, 2949, 57 L.Ed.2d 957. "[W]hen all legitimate reasons for rejecting an applicant have been eliminated as possible reasons for the employer's actions, it is more likely than not the employer, who we

generally assume acts only with *some* reason, based his decision on an impermissible consideration such as race." *Furnco*, 438 U.S. at 577, 98 S.Ct. at 2950.

As the concurring opinion of Justice Blackmun makes clear, the majority opinion in *Aikens* must be read as reaffirming the framework established in *McDonnell Douglas*. "Under that framework, once a Title VII plaintiff has made out a prima facie case and the defendant-employer has articulated a legitimate, nondiscriminatory reason for the employment decision, the plaintiff bears the burden of demonstrating that the reason is pretextual, that is, it is 'not the true reason for the employment decision'.... As the Court's opinion today implies, ... this burden 'merges with the ultimate burden of persuading the court that [the plaintiff] has been the victim of intentional discrimination'. [*Burdine*,] 450 U.S., at 256 [101 S.Ct., at 1095]." *Aikens*, 460 U.S. at 717, 103 S.Ct. at 1483, 75 L.Ed.2d at 411–12 (Blackmun, J., concurring).

Our examination of the record reveals few, if any, articulated, legitimate, nondiscriminatory explanations for the defendant's treatment of Calvin Carmichael. Therefore, even though this case was tried to a conclusion, we will consider with regard to each claim whether Carmichael produced enough evidence to make out the requisite prima facie case that he was the victim of discrimination. Because the question is not whether the defendant *did* discriminate but rather whether the plaintiff is entitled to a *presumption* of discrimination, this inquiry is essentially a legal one. *Gay v. Waiters & Dairy Lunchmen's Union Local 30*, 9 Cir.1982, 694 F.2d 531, 539–46; *see* Comment, *The Standard of Review in Title VII Disparate-Treatment Actions*, 50 U.Chi.L.Rev. 1481 (1983).

### III. *Hiring*

■ In deciding the plaintiff's hiring claim the district court relied on *McDonnell Douglas*. A complainant establishes a prima facie case of racial discrimination "by showing (i) that he belongs to a racial minority; (ii) that he applied and

was qualified for a job for which the employer was seeking applicants; (iii) that, despite his qualifications, he was rejected; and (iv) that, after his rejection, the position remained open and the employer continued to seek applicants from persons of complainant's qualifications." 411 U.S. at 802, 93 S.Ct. at 1824 (footnote omitted). The district court held that the plaintiff failed to make out a prima facie case because "[t]here is no evidence that at the time plaintiff was hired that defendant had any vacancies for any position other than the one for which plaintiff was hired, or that thereafter defendant hired anyone except plaintiff for a position for which plaintiff was qualified and for which plaintiff had applied ... or expressed an interest in". The plaintiff contends that the district court should not have applied *McDonnell Douglas* to the facts of this case. The plaintiff argues that he made out a "statistics-plus" prima facie case of discrimination, which should have created an inference of discrimination even in the absence of the *McDonnell Douglas* factors.

The plaintiff produced strong statistical evidence. Few blacks have worked at Birmingham Saw Works, and those who have (with a single exception) have been restricted to janitorial and repair shop jobs. Only one black has ever worked in City Sales, and none have worked in Outside Sales, Office, Receiving or Pick Up. In addition, the plaintiff produced evidence tending to indicate, for example, that blacks were required to do certain jobs (washing cars and mowing lawns) not required of whites. The trial court acknowledged the force of this evidence; but the court concluded that "[i]n the absence of a showing of all the [*McDonnell Douglas* ] criteria ... plaintiff has not proved a prima facie case which would be supported by statistical proof."

Important as *McDonnell Douglas* is in a Title VII action, the Supreme Court has consistently emphasized that *McDonnell Douglas* provides only *one* method of establishing discrimination. *Burdine*, 450 U.S. at 253 n. 6, 101 S.Ct. at 1094 n. 6; *Furnco*, 438 U.S. at 577, 98 S.Ct. at 2949; *International Brotherhood of Teamsters v. United States*, 431 U.S. 324, 358, 97 S.Ct. 1843, 1866, 52 L.Ed.2d 396; *McDonnell Douglas*, 411 U.S. at 802 n. 13, 93 S.Ct. at 1824 n. 13. If the district court believed that *McDonnell Douglas* must be followed in *every* individual disparate treatment case, it was mistaken.[1] Rather than following *McDonnell Douglas*, the plaintiff urges us to follow *Davis v. Califano*, D.C. Cir.1979, 613 F.2d 957, in which Court held that statistical evidence showing a classwide pattern of discrimination may establish a prima facie case of discrimination in an individual action just as in a class action. *Id.* at 962.

█ If they are strong enough, statistics alone may be enough to create a prima facie case of classwide discrimination. *James v. Stockham Valves and Fittings Co.*, 5 Cir.1977, 559 F.2d 310, 328–29, cert. denied, 1978, 434 U.S. 1034, 98 S.Ct. 767, 54 L.Ed.2d 781. And there is no doubt that statistics can be relevant and important in an individual case. *Harris v. Birmingham Board of Education*, 11 Cir.1983, 712 F.2d 1377, 1383; *Sweat v. Miller Brewing Co.*, 11 Cir.1983, 708 F.2d 655, 658. But statistics alone cannot make a case of individual disparate treatment. "One of the purposes of Title VII is to make persons whole for injuries suffered on account of unlawful discrimination.... [B]efore the court may award damages, plaintiff must first establish that she has, in fact, sustained an economic loss from defendant's discrimination." *Taylor v. Philips Industries*, 7 Cir. 1979, 593 F.2d 783, 787 (per curiam). Unless the individual plaintiff can point to some specific instance of discrimination, there is no wrong for the court to remedy.

---

1. For example, we have held that when a plaintiff presents convincing direct evidence of discriminatory intent, the defendant "bears not a burden of production but a burden of persuasion ... by a preponderance of the evidence that [the defendant] would have made the same decision in the absence of the illegal factor". *Bell v. Birmingham Linen Service*, 11 Cir.1983, 715 F.2d 1552, 1558. (footnote omitted).

Even *Davis*, on which the plaintiff relies, recognizes that once statistics have established a pattern of discrimination, each individual plaintiff must still establish that he "has been denied a[n] ... employment benefit ... in order to recover for particularized injuries." 613 F.2d at 962 (footnote omitted). In *Perryman v. Johnson Products Co.*, 11 Cir.1983, 698 F.2d 1138, this Court recognized that although a case of classwide discrimination might be made out by "compelling independent evidence of a pattern or practice of discrimination", in an individual case "each plaintiff bears the burden of proving that each employment decision that adversely affected him or her was the product of a discriminatory motive". *Id.* at 1143. This Court has also held "that a Title VII plaintiff bears the initial burden of establishing the economic injury resulting from the adverse employment action". *Walker v. Ford Motor Co.*, 11 Cir.1982, 684 F.2d 1355, 1361. For the plaintiff to establish economic injury, he must necessarily show that in fact he was the victim of an identifiable act of discrimination.

In short, whether we analyze Carmichael's hiring claim under *McDonnell Douglas* or under *Davis*, he must point to a job that he was denied because of his race. We must therefore determine whether the trial court's finding that Carmichael was not refused an available job is clearly erroneous or based on a mistake of law.

The plaintiff alleges that at the time he applied for a job, there were vacant full-time positions in City Sales. He further alleges that the defendant told him that there were no vacancies and eventually hired him only on a part-time basis because blacks were not hired for sales positions. The evidence shows that a white was hired for a City Sales job the same month that the plaintiff was hired as a janitor, and another white was hired for City Sales the next month.

The trial court's opinion, however, does not mention the City Sales positions. If the trial court found that Carmichael was not qualified for a City Sales job, or would not have accepted the job if offered, this would defeat his claim. On the other hand, a finding that Carmichael asked for a part-time job would not, by itself, defeat his claim that he was not offered an available full-time job because of his race. The defendant did not advertise its job openings. Carmichael could not be expected to ask for a sales position when he did not know one was available. Thuston, the defendant's only witness, testified that he told the plaintiff no full-time jobs were available. In these circumstances, Carmichael was not required to do more than indicate as best he could that he would take any available job.

The trial court's conclusion that the plaintiff was not "refused" an "available" job may have been based on an erroneous view of law. The availability of the City Sales job and the plaintiff's qualifications for that job present questions of fact that are not considered in the trial court's opinion. We therefore vacate and remand for further proceedings.

### IV. *Promotions*

The trial court rejected the plaintiff's promotions claim because it found evidence of only one available promotion—a Receiving Clerk position that became open in October 1977—and found legitimate reasons explaining why the plaintiff was denied that promotion. We conclude that these findings are faulty on several grounds. Even if a City Sales job was not available when the plaintiff was first hired in November 1978, such a job was available in December, when a white was hired for the job. The court may have properly disregarded the City Sales job because it found the plaintiff unqualified. But the plaintiff was not required to ask for that specific job, because he had no way of knowing about its availability. Similarly, the Receiving Clerk position was given to Carl Norris, a white employee in the Repair Shop with less seniority than the plaintiff, but the court found "no indication that plaintiff applied for or that he had expressed a prior interest in the job". Again, the plaintiff was not required to ask specif-

ically for that job when he did not know about it and where there was no formal mechanism for expressing his interest.

The defendant used no formal procedures for posting notice of available promotions or for determining who would be offered the promotion. Instead, the company relied on "word of mouth" and informal review procedures. We have recognized that such subjective procedures can lead to racial discrimination, both because important information may be available only to whites and because such procedures place no check on individual biases.[2] *James*, 559 F.2d at 346; *Rowe v. General Motors Corp.*, 5 Cir.1972, 457 F.2d 348, 358–59; *see also Payne v. Travenol Laboratories, Inc.*, 5 Cir.1982, 673 F.2d 798, 826–27, *cert. denied*, 1982, 459 U.S. 1038, 103 S.Ct. 451, 74 L.Ed.2d 605. For this reason we have held that "[t]he failure to establish 'fixed or reasonably objective standards and procedures for hiring' is a discriminatory practice". *Watson v. National Linen Service*, 11 Cir.1982, 686 F.2d 877, 881 (per curiam); *see also Boykin v. Georgia-Pacific Corp.*, 5 Cir.1983, 706 F.2d 1384, 1390, *cert. denied*, 1984, — U.S. ——, 104 S.Ct. 999, 79 L.Ed.2d 231.

To require this plaintiff to demonstrate an explicit expression of interest in specific jobs would also be at odds with the purposes of the prima facie case in analyzing evidence. The prima facie case raises a presumption of discrimination because it eliminates the most common reasons for rejecting a job applicant: a lack of qualifi-

cations and a lack of an available job. *Teamsters*, 431 U.S. at 358 n. 44, 97 S.Ct. at 1866 n. 44. The paradigmatic prima facie case, described in *McDonnell Douglas*, requires the plaintiff to prove that he "applied for" a job to eliminate another obvious nondiscriminatory reason: that the plaintiff was not offered the job because the company did not know he was interested. *McDonnell Douglas* "align[s] closely the prima facie case with proof of elements within the plaintiff's own objective knowledge." Note, *Relative Qualifications and the Prima Facie Case in Title VII Litigation*, 82 Colum.L.Rev. 553, 556 (1982); *see also* Méndez, 32 Stan.L.Rev. at 1141–42, 1142 n. 68, 1158. By showing that he applied, the plaintiff shows that the employer knew he was interested in the job. But when there is no formal notice of the job's availability, the plaintiff may have no means, within his own knowledge, of showing whether the employer considered him or not. Furthermore, when an employer uses such informal methods it has a duty to consider all those who might reasonably be interested, as well as those who have learned of the job opening and expressed an interest.

■ Accordingly, a plaintiff makes out a prima facie case—that is, he creates a presumption of discrimination and forces the employer to articulate legitimate reasons for his rejection—as long as he establishes that the company had some reason or duty to consider him for the post. The employer cannot avoid a Title VII violation by show-

---

**2.** Elmore Thuston testified that the "word of mouth" technique was adequate to give notice of promotion opportunities:

> "Like I say, it's a small company. Everybody eats lunch together, if there is going to be a job open somewhere up the ladder, everybody is going to know about it."

Transcript 44. But as one of the few blacks in an overwhelmingly white firm (on June 1, 1976 only 3 of the 44 employees were black), Calvin Carmichael was unlikely to have much access to the information grapevine. *See Payne*, 673 F.2d at 827; *Rowe*, 457 F.2d at 359 & n. 23. In pointed contrast to Thuston's testimony is the plaintiff's testimony regarding his own lunch-time experiences:

> "[W]henever we would have lunch breaks, I had been forced—I wasn't forced, but I accepted to either leave the shop and go to a nearby store, or just sit in the back by myself, because each time that I attempted to sit with the other employees, the foreman ... had a way of telling what he termed nigger jokes. He did that several times. One time he told one and got up and walked away and his nephew asked me—he told him, say, I notice that you got—looked like you got mad when he said that and he went and told his uncle that I got mad and he came and told me that he didn't know that that would offend me, I will never do it again. A few days after that, he did it again."

Transcript 140–41.

ing that it incorrectly assumed that the plaintiff was uninterested in the job. When the plaintiff had no notice of or opportunity to apply for the job, such a reason for rejection is "legally insufficient and illegitimate". *Harris*, 712 F.2d at 1383–84.

■ The district court assumed that the plaintiff had to show that he had expressed interest in a specific job to make out a case of discriminatory rejection. Its conclusions must therefore be vacated and the case remanded. It is a disputable question of fact whether the defendant had any reason to think the plaintiff was interested in a sales job. This determination is left in the first instance to the trial court. Given the plaintiff's evidence that only one black has ever worked in sales, the court should consider the possibility that the defendant assumed Carmichael would not be interested in sales *because* he is black.

In contrast, the record permits only one conclusion as to whether the defendant knew the plaintiff was interested in the Receiving Clerk job. There can be no doubt that the plaintiff expressed an interest in promotions within the plant. Indeed, he filed an EEOC complaint on April 12, 1976, complaining that he had been "continuously passed over for raises and promotions." Furthermore, the defendant's subjective promotion procedures imposed upon the defendant a duty to consider for any open position all employees who might reasonably be interested in the position. There is no discernable reason why the defendant should have considered Carl Norris but not the plaintiff. As a matter of law, the defendant should have considered the plaintiff for the promotion, and his claim cannot be defeated simply because the defendant assumed he was uninterested. *See Paxton v. Union National Bank*, 8 Cir.1982, 688 F.2d 552, 568, *cert.*

*denied*, 1983, 460 U.S. 1083, 103 S.Ct. 1772, 76 L.Ed.2d 345.

■ The trial court also found that the plaintiff would not have been interested in the Receiving Clerk position, because it would not have represented a promotion. The court stated that the job "paid no more than plaintiff's job and perhaps less. There is some indication that plaintiff would not have accepted the position because of the wages." This finding is clearly erroneous. The defendant's Vice-President testified that wage rates are not necessarily connected with particular jobs, but rather with seniority and experience. Transcript 42–43. There was no evidence that Carmichael would have received less pay had he been given the Receiving Clerk job. Norris had been making $3.05 an hour, ten cents an hour less than the plaintiff, but when he was promoted to Receiving Clerk in October 1977 he received an immediate raise to $3.15. The plaintiff's wage was increased to $3.25 in December, but Norris was raised to $3.30 in February 1978 and to $3.65 in June 1978, while the plaintiff's pay remained at $3.25 until June 1978 and was raised to $3.40 thereafter. In other words, after his promotion, Norris made less than the plaintiff only in January 1978, and made more than the plaintiff thereafter, even though the plaintiff had seven months' more seniority. Moreover, the Receiving Clerk position had better working conditions. We have held that a job is a "promotion", although it does not represent an immediate increase in pay, if it has better working conditions or greater long term earnings potential. *James*, 559 F.2d at 331, 348. The district court's finding that the plaintiff would not have taken the job "because of the wages" is apparently based on the plaintiff's statement, in response to a hypothetical question by defense counsel, that he would not have taken a cut in pay to be transferred to the Receiving Clerk position.[3] Since there was

---

**3.** Q. [Mr. May, defense counsel]: ... Do you know that Mr. Norris was not making as much as you were when he was transferred to receiving; did you know that?

A. He was hired after me, so I take it for granted that he wasn't making as much as I was making.

Q. At the time he was transferred to receiving, when he was transferred, his salary in

no evidence that a transfer would have entailed a pay cut, and since the job had greater long-term earning potential, the court was wrong to give any weight to this hypothetical response.

Apart from the reasons we have already rejected, the record reveals no other reasons why Norris was promoted instead of the plaintiff. We remand for further proceedings, but we note that this absence of legitimate articulated reasons "is of particular legal significance" because "on remand, the district court will be confronted with [the defendant's] prima facie case absent a sound articulated reason for [his] rejection". *Watson*, 686 F.2d at 880, 881.

### V. *Wages*

The trial court found that "at the time plaintiff was placed in the repair shop, there did exist a discriminatory practice of starting black employees at an hourly wage less than that paid to starting white employees for the same job". The defendant does not challenge this finding, which is amply supported by the evidence. We are unable, however, to affirm the court's findings as to the amount of back pay to be awarded. The court stated:

> receiving or his hourly rate was not as much as yours?
> A. Yes, sir.
> Q. Did you know that?
> A. I didn't know that.
> Q. Is that the reason you said receiving would be a better job than what you were doing because you thought you would be making more money?
> A. No, sir. It was a better job. You were out of the noise the machines made and it was a much cleaner job.
> Q. Easier job?
> A. Easier job.
> Q. Would it have been receiving less money to you to have been transferred to receiving?
> A. No, sir.
> Q. You wouldn't have taken a cut in pay, would you?
> A. No, sir.
>  MR. QUINN [plaintiff's counsel]: Judge, I'm going to object to that question unless he could show there would be a cut in pay.
>  MR. MAY: The information you furnished indicates Mr. Norris, when he transferred in October of '77, made three fifteen an hour and Mr. Carmichael—
>  MR. QUINN: Unless it indicates that he had been working there that long and the ques-

"The court has determined that this disparity averaged 20 cents per hour and that this differential was reflected in plaintiff's average wage throughout his tenure as an employee. The court finds that later raises given to plaintiff were not discriminatory and that the only wage discrimination results from the original disparity."

The court did not explain how it had arrived at the 20 cents an hour figure. Nor did the court explain its conclusion that later raises were not discriminatory. The plaintiff introduced substantial evidence indicating that the initial wage disparity increased over time. The plaintiff's wages increased more slowly than those of two white repair shop employees hired in July 1975 and February 1976. We have already described how Carl Norris's wages overtook the plaintiff's. The trial court's opinion gives no indication why this evidence was disregarded. We also have some difficulty understanding how the trial court could have determined that the disparity "averaged" 20 cents an hour, when evidence of the number of hours Carmichael worked was not introduced until after the court rendered its first opinion.

> tions have been—is based on the time you have been there unless you are black and that is the indication I think that that's left for argument.
> Q. My question was, would you have taken a cut in pay to be transferred to receiving?
> A. Well, the people who were transferred from different departments weren't taking a cut in pay. They were keeping the same pay. If I would have gone to shipping and receiving, I would have kept the same pay that I had.
> Q. Assume for the sake of this question that there was a cut in pay in terms of what you were making at the time Mr. Norris was transferred to receiving. Would you have taken a cut in pay in order to be transferred from the repair shop to receiving?
> A. No, sir.
>  MR. QUINN: Again, I object to the question because it assumes facts which are not in evidence.
>  THE COURT: Well, I don't know that under the circumstances that has a great deal of significance, but I overrule.
> Transcript 87–89.

**1136**

■ Once the court found that the defendant had a practice of initial wage discrimination this was enough to create an inference that all successive wage disparities were the product of racial discrimination. At this point it was incumbent upon the defendant at least to articulate legitimate reasons for the increasing disparity, if not to *prove* those reasons.[4] The record does not indicate that the defendant met its burden of articulation.

■ Because the district court did not explain how it arrived at the twenty-cent figure, and because we have been unable to determine a satisfactory basis in the evidence for that award, we vacate and remand. If, after further consideration, the court still finds the twenty-cent figure to be correct, it should provide a full explanation. If the court concludes that there were increasing wage disparities, it should increase the award to the plaintiff accordingly unless it finds articulated nonpretextual reasons to justify those disparities and furthermore finds the plaintiff's statistical evidence of racial wage disparities insufficient to prove that the wage deficiency was more likely than not the product of racial bias. Of course, the court may also find it necessary to reappraise its back pay award in the light of our conclusions as to the plaintiff's hiring and promotion claims.

## VI. *Injunctive Relief*

The plaintiff sought injunctive relief ordering the defendant not to engage in racially discriminatory hiring practices and further requiring the defendant to adopt affirmative action policies to remedy the effects of past discrimination. The district court, however, adverted to the request for injunctive relief only in the context of the plaintiff's evidence that he was required to wash cars and mow lawns even after he had been promoted from janitor to the repair shop. The court observed only that "since plaintiff is no longer employed by the defendant and has not sought reinstatement, this question is now moot".[5]

■ On appeal the plaintiff argues that the district court erred by not awarding injunctive relief after having found a Title VII violation and evidence of a pattern of discrimination. The plaintiff argues that the district court erroneously assumed that injunctive relief benefitting a minority class is only appropriate in a class action. The plaintiff correctly states that injunctive relief may benefit individuals not party to the action, and that classwide injunctive relief may be appropriate in an individual action. *Meyer v. Brown & Root Construction Co.*, 5 Cir.1981, 661 F.2d 369, 373–74; *Evans v. Hartnett County Board of Education*, 4 Cir.1982, 684 F.2d 304, 306.

■ Injunctive relief, however, would be inappropriate in this case. The plaintiff does not seek reinstatement and has shown no other way in which he would benefit personally from the relief requested. Although injunctive relief may benefit non-parties as well as parties to a Title VII action, the class benefitted by the injunction must include the plaintiff. Otherwise, the injunctive relief is unnecessary to the "just disposition of the action". *Meyer*, 661 F.2d at 374; *accord Muller v. United States Steel Corp.*, 10 Cir.1975, 509 F.2d 923, *cert. denied*, 1975, 423 U.S. 825, 96 S.Ct. 39, 46 L.Ed.2d 41; *Gregory v. Litton Systems*, 9 Cir.1973, 472 F.2d 631, 634. The denial of injunctive relief is affirmed.

## VII. *Attorney Fees*

Our review of the attorney fee award is hampered by the district court's inadequate explanation of how it evaluated the various factors it was required to consider. The

---

**4.** We have held, for example, that "[p]roof of an immediate past history of racial discrimination alone can be sufficient to shift to the local board of education the burden of justifying its employment decisions by clear and convincing evidence". *Harris v. Birmingham Board of Education*, 11 Cir.1983, 712 F.2d 1377, 1383; *see also*

*Lee v. Russell County Board of Education*, 11 Cir.1982, 684 F.2d 769, 773 n. 5, 775 n. 7.

**5.** The plaintiff makes no argument that he is entitled to damages for these discriminatory working conditions. *See Walker v. Ford Motor Co.*, 11 Cir.1982, 684 F.2d 1355, 1363–65.

defendant defends the award as within the trial court's discretion, but at oral argument defense counsel admitted that the district court's findings were largely impervious to review. The district court listed the twelve factors first outlined in *Johnson v. Georgia Highway Express*, 5 Cir.1974, 488 F.2d 714, 717–19, but for most of them did no more than make a conclusory finding without showing how that finding affected the final award. In fact, it appears that only two factors really mattered in the court's decision: the court found that 90 hours was the reasonable time to spend on this litigation and that $60/hour was the reasonable rate. But the court gave no satisfactory explanation of these findings either.

A. *Hours*

The plaintiff's counsel presented affidavits to show that they expended 124 hours on this case. The court agreed with the defendant's contention that "unnecessary time was spent on matters on which the plaintiff neither prevailed nor could have reasonably anticipated he would prevail upon." The court then stated "that ninety hours was a reasonable amount of time to spend in preparation and trial".

▮ The district court is of course empowered to disallow hours it finds excessive or unnecessary. But "[i]f the court finds the number of hours excessive, it should identify the hours disallowed and explain why it is disallowing them." *Fitzpatrick v. Internal Revenue Service*, 11 Cir.1982, 665 F.2d 327, 332. Otherwise, we have no way of reviewing the decision. *Johnson v. University College*, 11 Cir. 1983, 706 F.2d 1205, 1207–08, *cert. denied*, 1983, ── U.S. ──, 104 S.Ct. 489, 78 L.Ed.2d 684.

▮ The district court should consider the extent of the plaintiff's success in determining whether hours were reasonably expended. "[W]here the plaintiff achieved only limited success, the district court

should award only that amount of fees that is reasonable in relation to the results obtained." *Hensley v. Eckerhart*, 461 U.S. 424, ──, 103 S.Ct. 1933, 1943, 76 L.Ed.2d 40, 55. But the court should not disallow hours that were related and necessary to the successful claims. *Id.*, 461 U.S. at ── ── ──, 103 S.Ct. at 1940–41, 76 L.Ed.2d at 51–52; *Morgado v. Birmingham-Jefferson County Civil Defense Corps*, 11 Cir.1983, 706 F.2d 1184, 1192–93, *cert. denied*, 1984, ── U.S. ──, 104 S.Ct. 715, 79 L.Ed.2d 178. In the present case, the plaintiff had to develop fully the facts concerning his employment for the court to be able to evaluate his contentions; thus, even if only the wage claim were ultimately successful, the time spent developing facts concerning the hiring and promotion claims would be compensable if these facts were also probative on the wage claim.

Because the district court did not specify what hours it was disallowing, we do not know whether the plaintiff is correct in contending that the court refused to award fees for post-trial work and time spent litigating the fees issue.[6] If the district court did so, however, it was error. *Johnson v. University College*, 706 F.2d at 1207; *Johnson v. Mississippi*, 5 Cir.1979, 606 F.2d 635, 637–39.

B. *Hourly Rate*

▮ The plaintiff's attorneys requested an hourly rate of $75/hour, and presented evidence that the customary hourly fee for similar noncontingent work ranged from $60 to $90. Probably because it found the case relatively simple, the court chose the low figure of $60. The plaintiff now argues that this was error because the defendant did not oppose the request for $75/hour. This argument is wrong. "[T]he court does not have to accept uncontradicted evidence if there is a reason for rejecting it." *King v. McCord*, 11 Cir.1983, 707 F.2d 466, 468 (per curiam). The plaintiff is on stronger ground when he argues that the district court provided

---

**6.** The plaintiff bases this interpretation on the district court's statement that ninety hours was

a reasonable time "to spend in preparation and trial".

inadequate reasons for its decision. The court found that "[t]here was no fixed or contingent fee arrangement". In fact the affidavit of the plaintiff's attorney, Michael Quinn, states explicitly, "The case was accepted on a contingent basis". 1st Supp. Record 5. The district court's confusion is understandable, because the affidavit of the other plaintiff's attorney, Robert L. Wiggins, makes an ambiguous reference to "the type of representation required in the present case when the fee is not contingent on the outcome." Record 45. Moreover, the attorneys would have aided their case considerably had they provided more specific information about the exact nature of the fee arrangement: apparently, they were to collect fees only if fees were awarded by the court, but this is far from clear in the documentation they filed. Still, the evidence did reveal some kind of a contingent arrangement, and the hourly fee probably ought to be raised to reflect that fact. *Jones v. Diamond*, 5 Cir.1981, 636 F.2d 1364, 1382 (en banc), *cert. dismissed*, 1981, 453 U.S. 950, 102 S.Ct. 27, 69 L.Ed.2d 1033. When the attorney fee is contingent on success, the hourly rate should ordinarily be raised to compensate the attorney for the risk of nonrecovery. *See* Berger, *Court Awarded Attorneys' Fees: What is "Reasonable"?*, 126 U.Pa.L. Rev. 281, 324–26 (1977). The law does not require "that there must be enhancement in every case in which the fee is contingent", but the trial court must consider such enhancement and provide legitimate reasons for its decision. *Yates v. Mobile County Personnel Board*, 11 Cir.1983, 719 F.2d 1530, 1533–34.

### C. *Other Factors*

The plaintiff challenges as clearly erroneous several other of the district court's *Johnson* findings, but these findings are

7. The court is free, of course, to reconsider these findings on remand.

8. Our reluctance also grows out of a general concern that the courts ought to address themselves primarily to the merits of the case rather than to the compensation paid to the attorneys. "A request for attorney's fees should not result

supported by the evidence.[7] The court did not, however, adequately explain how its findings on the *Johnson* factors affected its ultimate award of fees. Without this explanation, "review is impossible because no basis exists to judge the trial court's exercise of its discretion." *Fitzpatrick*, 665 F.2d at 332. The trial court cannot simply make *Johnson* findings; it must "articulate how each factor affected the fee award." *Fitzpatrick*, 665 F.2d at 333. Otherwise, we have no "assurance that the court has arrived at a just compensation based upon appropriate standards". *Id.* at 332.

### D. *Interest and Compensation For Delay*

The plaintiff argues that the district court erred in not awarding interest on the fee award. It appears, however, that the plaintiff never requested interest, so the court can hardly be faulted for failing to award it. *See Gates v. Collier*, 5 Cir.1980, 616 F.2d 1268, 1278 n. 16. On remand, however, the district court should consider whether to take into account the long delay in any payment to the plaintiff or his counsel (it has been five years since this case was filed). *Johnson v. University College*, 706 F.2d at 1210–11; *Morgado*, 706 F.2d at 1193–94.

### E. *Proceedings on Remand*

Somewhat reluctantly, we vacate the court's findings on attorney fees and remand for further proceedings. Our reluctance stems in part from our conviction that the deficiencies in the court's findings are largely the responsibility of the plaintiff's attorneys.[8] Had the attorneys been more precise and explicit in their initial fee request it is unlikely that the court would have misunderstood the nature of the con-

in a second major litigation." *Hensley v. Eckerhart*, 1983, 461 U.S. 424, ___, 103 S.Ct. 1933, 1941, 76 L.Ed.2d 40, 53. *See generally* Green, *From Here to Attorney's Fees: Certainty, Efficiency, and Fairness in the Journey to the Appellate Courts*, 69 Cornell L.Rev. 207 (1984).

tingent fee arrangement. Moreover, although the court erred by not identifying the hours it was disallowing, this failure may well have been due to difficulty in discerning, from the attorneys' records, which hours were spent on which claims. Given our conclusions as to the merits of the plaintiff's case, it is likely that few hours were in fact spent on unrelated, unsuccessful claims. Still, the attorneys should bear in mind that "[i]n a case where part of the attorney's efforts are to go uncompensated, the burden is on the attorney to provide sufficient evidence for the court to make a correct division." *King*, 707 F.2d at 468. We therefore remand in the hope that the parties and the court will together produce a record of adequate detail to permit meaningful and efficient review.

The judgment is AFFIRMED in part, VACATED in part, and REMANDED.