[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 11-14842
Non-Argument Calendar
_____

D.C. Docket No. 9:10-cv-80595-WPD


EDWARD W. JENKINS,

Plaintiff-Appellant,

versus

NATIONAL WATERWORKS, INC.,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(December 20, 2012)

Before TJOFLAT, HULL and PRYOR, Circuit Judges.

PER CURIAM:

Edward Jenkins, who is African-American, filed this 42 U.S.C. § 1981

action alleging that his employer, National Waterworks, Inc. ("NWI"), discriminated against him based on his race when it promoted a white employee, Steve Gurski, over him for the position of warehouse manager. The district court granted NWI's motion for summary judgment, concluding that Jenkins failed to show that NWI's legitimate, nondiscriminatory reason for promoting Gurski was a pretext for racial discrimination. After review, we affirm.[1]

Under the McDonnell Douglas burden-shifting framework used in circumstantial evidence cases, a plaintiff is initially required to establish a prima facie case of discrimination. McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802, 93 S. Ct. 1817, 1824 (1973).[2] If the plaintiff does so, the burden then shifts to the employer to articulate a legitimate, nondiscriminatory reason for the adverse employment action. Id. at 802-03, 93 S. Ct. 1824. If the employer satisfies this burden of production, the burden shifts back to the plaintiff to establish that the employer's articulated reason is merely pretext for discrimination. Id. at 804, 93

---

[1]We review a grant of summary judgment de novo, viewing the evidence in the light most favorable to the party opposing the motion. Springer v. Convergys Customer Mgmt. Grp., 509 F.3d 1344, 1347 (11th Cir. 2007). Summary judgment is appropriate where there are no genuine dispute as to any material fact, and the moving party is entitled to a judgment as a matter of law. Id.; Fed. R. Civ. P. 56(a).

[2]Discrimination claims brought under § 1981 "have the same requirements of proof and present the same analytical framework" as those brought pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2(a). Springer, 509 F.3d at 1347 n.1.

S. Ct. at 1825.

If the proffered reason is one that might motivate a reasonable employer, a plaintiff cannot merely recast the reason, but must "meet that reason head on and rebut it." Chapman v. AI Transp., 229 F.3d 1012, 1030 (11th Cir. 2000) (en banc). An employer's reasons may be shown to be pretext "by revealing such weaknesses, implausibilities, inconsistencies, incoherencies or contradictions in [its] proffered legitimate reasons for its actions that a reasonable factfinder could find them unworthy of credence." Springer v. Convergys Customer Mgmt. Grp. Inc., 509 F.3d 1344, 1348 (11th Cir. 2007) (quotation marks omitted). A reason cannot be "pretext for discrimination unless it is shown both that the reason was false, and that discrimination was the real reason." St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 515, 113 S. Ct. 2742, 2752 (1993) (internal quotation marks omitted); see also Brooks v. Cnty. Comm'n of Jefferson Cnty., 446 F.3d 1160, 1163 (11th Cir. 2006).

In the context of a promotion, the plaintiff cannot show merely that he was better qualified than the person who received the position or that the employer's promotion decision was mistaken, but rather must show that the decision was motivated by race. Springer, 509 F.3d at 1349. When the promotion decision rested on qualifications, the plaintiff must show that the disparities in

3

qualifications were "of such weight and significance that no reasonable person, in the exercise of impartial judgment, could have chosen the candidate selected over the plaintiff." Id. (quotation marks omitted).

Here, NWI conceded for purposes of summary judgment that Jenkins could establish his prima facie case. Thus, the burden shifted to NWI to articulate a legitimate, nondiscriminatory reason for promoting Gurski rather than Jenkins to the warehouse manager position, which it did.

Specifically, NWI submitted the deposition testimony of Joe Antico, the branch manager who made the promotion decision. Antico testified that he chose Gurski because he believed Gurski was the best fit for the position out of all the warehouse employees. Antico explained that his decision was based on his two years' experience working with the warehouse employees and his observations and feedback from others. Contrary to Jenkins's contention, this evidence was sufficient to meet NWI's burden. See Chapman, 229 F.3d at 1024 (explaining that the employer "need not persuade the court that its proffered reasons are legitmate" because the "employer's burden is merely one of production").

Moreover, the district court did not err in concluding that Jenkins failed to present evidence from which a jury could conclude that NWI's reason—that Gurski was the best fit for the position—was a pretext for racial discrimination.

4

At the outset, we note that the district court struck Jenkins's untimely response to NWI's summary judgment motion and limited its review to the evidence submitted by NWI in support of its motion. Jenkins does not challenge this ruling on appeal and agrees that our review is limited to NWI's evidence.

According to NWI's undisputed evidence, Antico had worked at NWI as an account manager for two years when he was moved to the branch manager position as part of a company-wide reorganization. While working as an account manager, Antico had learned of coordination and communication problems between the customer service representatives and the warehouse personnel that affected NWI's customers. Antico believed these problems were caused by a lack of leadership in the warehouse. After becoming the branch manager, Antico decided to create a warehouse manager position to act as a bridge between the employees in the warehouse and the customer service representatives in the office. The warehouse manager would "help schedule deliveries and pickups in a way that would service the customers, be most efficient and be clearly communicated to all parties involved . . . ."

Antico considered all of the warehouse employees for the new position. During Antico's two years as an account manager, he was able to observe the warehouse employees regularly and also received feedback from customers, the

5

customer service representatives and other warehouse workers about each employee's performance.  In addition, Antico had worked with Gurski for five years at NWI's competitor and was very familiar with the quality of Gurski's work because of that long-term working relationship.  However, Antico explained that, because NWI was a small, integrated company, he had sufficient opportunity to develop knowledge of both Jenkins's and Gurski's work.  Based on this knowledge, Antico decided that Gurski, who had both customer service representative and warehouse experience, would be the best fit for the new warehouse manager position.  Antico then approached Gurski to see if he would accept the position, and Gurski indicated that he would.

Although Jenkins alleged that he was more qualified than Gurski, there is no evidence in the record to support this claim.  In his deposition, Jenkins admitted that he did not know how his experience and qualifications compared to Gurski's.  Thus, Jenkins did not show that he was more qualified than Gurski, much less that he was so much more qualified that no reasonable person would have chosen Gurski over him.  See Springer, 509 F.3d at 1349.

In addition, Jenkins himself offered two reasons for why he was not promoted that were unrelated to his race.  Jenkins testified that he believed he was not promoted because Antico and Gurski were friends who had worked together

6

before and had played hockey together and because Jenkins had reported an unfair

practice (employees taking NWI's truck home) to corporate officials.

Accordingly, nothing in the record suggests that Antico's reason for choosing

Gurski over Jenkins was not the real reason or that the real reason was Jenkins's

race.  See Springer, 509 F.3d at 1349.

Jenkins contends that a jury could find that Antico's reason for selecting

Gurski was false because Antico did not post the position or review Jenkins's

personnel file before making his selection and Antico interviewed only Gurski and

did so only after selecting him.  When considered in light of the undisputed

evidence as a whole, these facts do not support a finding of pretext.

It is undisputed that, in the past, openings had been posted on a bulletin

board in the lunchroom and in the company newsletter.  However, it is also

undisputed that Antico was unaware of any policy for posting openings when he

created the warehouse manager position.  Antico explained that, when he became

the new branch manager, he was "learning as [he] was going along what the

company's protocol was on things like this."  Instead of posting the position and

waiting to see who expressed an interest, Antico simply considered all of the

warehouse employees, including Jenkins, for the promotion.  There is no evidence

that Jenkins was disadvantaged by Antico's failure to post the position, even

7

assuming it violated NWI's policies.  See Springer, 509 F.3d at 1350 ("[E]ven where preselection violates corporate personnel policies, it does not necessarily indicate racial discrimination.").[3]

The fact that Antico did not look at Jenkins's personnel file also does not show pretext.  Antico did not look at anyone's personnel file before making his decision.  Instead, Antico based his decision on his first-hand experience with the warehouse employees and feedback from others about their performance.  The record does not support Jenkins's claim that because Antico did not look at his personnel file, he could not have been aware of Jenkins's qualifications.  Antico testified that he was sufficiently familiar with Jenkins's work performance based on his two years of observing Jenkins first-hand, and that this was the information he used to make his decision.

The record also belies Jenkins's contention that Antico chose Gurski first and then interviewed him "to learn of his qualifications."  Antico did not interview any candidates as part of the selection process.  Antico explained that, after deciding Gurski was the best fit, he talked with Gurski to make sure Gurski

---

[3]Jenkins's reliance on Carmichael v. Birmingham Saw Works, 738 F.2d 1126 (11th Cir. 1984), is misplaced.  Carmichael concluded that, for purposes of establishing a prima facie case, a plaintiff need not show he applied for a promotion if the employer failed to provide plaintiff with notice of the position and an opportunity to apply for it.  Id. at 1133-34.  Here, it is undisputed that Antico considered Jenkins for the position without requiring him to apply and also that Jenkins made out his prima facie case.

8

wanted the position, not to learn of his qualifications.

We find no error in the district court's conclusion that Jenkins failed to present evidence that NWI's reason for promoting Gurski was pretext for racial discrimination. We accordingly affirm the district court's entry of summary judgment in favor of NWI on Jenkins's § 1981 discrimination claim.

**AFFIRMED.**