Felix BUTLER, Plaintiff,

v.

CORAL VOLKSWAGEN, INC., Defendant.

No. 82–8574–Civ.

United States District Court, S.D. Florida, Miami Division.

March 4, 1986.

Jeffrey Pheterson, Lakeworth, Fla., for plaintiff.

D. Culver Smith, III, West Palm Beach, Fla., for defendant.

## MEMORANDUM DECISION

SCOTT, District Judge.

### INTRODUCTION

This is a race discrimination action alleging racial harassment and discriminatory termination based on Title VII of the Civil Rights Act of 1964, 42 U.S.C. Section 2000e, and 42 U.S.C. Section 1981. Jurisdiction is properly vested pursuant to these statutes and pursuant to 28 U.S.C. Section 1331. This Court is sitting as the trier of fact in this case. See, *Anderson v. City of Bessemer City, North Carolina,* —— U.S. ——, 105 S.Ct. 1504, 1512, 84 L.Ed.2d 518 (1985).

The parties to this controversy are Felix Butler, a black citizen of the United States, and Coral Volkswagen, Inc., a Florida corporation, which operates an automobile dealership in the West Palm Beach, Florida area. The defendant was an employer within the meaning of 42 U.S.C. § 2000 et seq. and employed more than fifteen persons at all times material to this case. Approximately 45 people were employed by this dealership.

This Court will divide its factual discussion into three aspects: background, racial harassment and termination.

### BACKGROUND

Felix Butler is a black American former employee of defendant, Coral Volkswagen, Inc. Butler applied for a position with defendant as a mechanic's apprentice. Prior to his employment by defendant, Butler served in the United States Marine Corps as a military policeman, holding the rank of Sergeant at the time of his honorable discharge. After discharge he received two years of technical training in automotive mechanics at the North Technical Education Center in Riviera Beach, Florida under his G.I. Bill. He received a letter of recommendation from his instructor and he is a high school graduate.

Butler's initial duties at the dealership were those of a lubeman, performing oil changes, monitoring fluid levels and doing related tasks. He was told that he would be sent to a mechanic's school and, indeed, Mr. Butler believed that. I find that the "lure" of becoming a mechanic was an integral aspect of the parties' contract of employment.

After Butler had been employed by the defendant for approximately six months,

Harrison Laney, General Manager of the defendant, requested that Butler be tested. He scored sufficiently high and he was sent to Volkswagen of America mechanic's classes in Jacksonville, Florida. Plaintiff successfully completed that one week course. During Butler's employment, his picture was hung in the service department with those of the other mechanics and underneath his picture were the words "Mechanic's Apprentice."

During Butler's tenure, and in addition to the customary duties of lubeman, Butler was assigned mechanic's tasks and, indeed, he was given a mechanic's number. No other lubeman was ever given a mechanic's number. However, immediately prior to his termination by defendant, Butler was instructed by Richard Blackford, Service Manager, to perform progressively more tasks that were not routinely contemplated at the time of Butler's employment such as sweeping and cleaning the floors, cleaning toilets and pulling weeds.

On or about August 29, 1979, Blackford confronted Butler concerning whether Mr. Butler would continue to perform such duties without extra pay, including one task customarily done on a volunteer basis for additional compensation. Blackford demanded an immediate answer and, as Butler stood in front of Blackford, he was fired on the spot for failing to give an immediate answer.

Butler filed a timely complaint of racial discrimination with the EEOC and the Florida Commission on Human Relations. On October 22, 1981, the Florida Commission issued a Notice of Determination-Cause, indicating there was reasonable cause to believe that Butler had been discriminated against on the basis of his race. When it appeared that no relief would be forthcoming, Butler filed in this court the present action.

## RACIAL HARASSMENT

During Butler's tenure, he was confronted with racial epithets on a continuous basis. Bernie Waszak's and Richard Blackford's testimony was sufficiently graphic and it need not be repeated here. The testimony of Christopher Brooks, another former black employee of the Service Department, which I adopt as true and correct, also completes the factual scenario. Suffice it to say, epithets such as "Good morning, nigger," "Nigger, get your ass in here" and "We got another dumb nigger" were commonplace.

During his employment, plaintiff was frequently referred to as "nigger" by defendant's employees. Further, use of the term "nigger rigged" and other racially abusive language was a daily occurrence in the defendant's workplace. Its use was repeated and prolonged despite the plaintiff's objections. The tone of these comments was derisive. The use of this abusive language made plaintiff feel unwanted and uncomfortable at Coral Volkswagen. Specifically, Louis Csete referred to Felix Butler as "nigger" a number of times a day. Bernard Waszak also referred to Felix Butler as "nigger" on a frequent basis. Christopher Brooks, a black porter employed during Butler's tenure, was also subjected to racially abusive language.

Felix Butler complained about the use of the racially abusive language in the workplace to Richard Blackford. Blackford laughed and told the plaintiff, and I quote, "Don't you know the South was the last place to stop or abolish slavery?" When Butler received no effective corrective actions by Blackford, he took his case to Harrison Laney. Laney spoke briefly with all mechanics one time after Butler complained. He did not inquire as to whether any of these employees had in fact made any of these racially abusive statements and made no investigation whatsoever. He simply told each mechanic, in individual conversations, that if they did make any such statements to stop doing so. After this one brief conversation with each employee, he did not follow up to see if the remarks had stopped. He held no meetings of employees to advise them of company policy. He formally disciplined no one. He promulgated no written memoranda or

policies indicating that such abusive harassment was against company policy.

The derogatory comments and slurs continued after Laney's conversations. Blackford, whose office is near the shop floor, could not have missed the fact that the harassment did not stop. Neither of these managerial employees took any steps which were in keeping with the situation. Neither of these managerial employees undertook any meaningful corrective action or actions which, in this Court's viewpoint, would rectify the then present situation.

Coral Volkswagen created or condoned an environment in the workplace which significantly and adversely affected the psychological well-being of Felix Butler because of his race. Brooks had also complained to Blackford about this harassment at approximately the same time, to no avail. Racial jokes were told at defendant's job site by employees, which practice was common to all levels of management including Laney. That atmosphere was permeated with racial epithets; jokes were directed to Butler based on race. Further, he was harassed by, and made the butt of practical jokes by Blackford and others based upon his race. He was sent out to the parking lot in the rain to bring in cars for service. These cars did not exist, thus making him run around the parking lot getting wet for no purpose.

So, to summarize the atmosphere and its effect on Mr. Butler, I borrow from Mr. Butler's own testimony, "They didn't treat me like a man." The plaintiff never referred to himself as "nigger", contrary to the assertions of defendant. For the benefit of this record, the Court substantially adopts Mr. Butler's testimony as true and correct.

This company is hoisted on its own petard by its utter failure to apply its own employment policies as outlined in its policy manual. This manual, a copy of which was provided to Mr. Butler, states, "It is the intent of this company to see that each employee is treated fairly and to maintain working conditions that would be to the company's and employees' mutual benefit."

I make a factual finding that was not done in this case and it was known to management that the serious adverse conditions existed.

## PLAINTIFF'S TERMINATION

After the plaintiff complained about the use of racially abusive language, Richard Blackford assigned him progressively more duties of the position of porter, which involved maintenance and janitorial functions. A reasonable inference made by this Court is that Blackford did so in an effort to force plaintiff's resignation. Plaintiff was instructed by Blackford to perform manual labor in pulling weeds, sweeping floors, cleaning bathrooms and performing the other tasks of a porter, including personally washing the automobile of Richard Blackford. Butler was required to wash this automobile although defendant employed other personnel whose primary function was to wash cars. Although some of these duties are customarily required of a lubeman, plaintiff was assigned these duties on a level and at a rate unlike any other employee in a position other than porter, obviously due to the racial issue involved.

On or about March 22, 1979, Felix Butler received a merit increase due to his performance. On or about June 27, 1979, plaintiff voluntarily agreed to perform extra duties involved with the cleaning of the floor of the shop after normal working hours at an additional $75.00 a month, and he satisfactorily performed those duties. As of August 10, 1979, plaintiff advised Blackford that he no longer wished to clean the shop floor after hours for extra money. The task was harder than originally agreed as the porter, then a white male, was not adequately preparing the shop floor for this weekly intensive cleaning.

On August 29, 1979, plaintiff was called into Blackford's office and was asked by Blackford whether he would perform the task of cleaning the shop floor after normal working hours and other duties, in addition to his current assignments, without extra pay. Plaintiff clarified that

Blackford was asking him to do work customarily done at additional compensation but was requiring him to do so without being paid. Blackford became belligerent. Plaintiff was told by Blackford if he didn't advise him at that point that he would perform the duties as requested, he should look for another job. Plaintiff stated he could not say "yes" or "no" at that time and asked for some time to consider the situation. This conversation took place around the time of the lunch break. Blackford stated that he required an immediate answer. When the plaintiff's answer was not forthcoming, he was terminated.

It is my view Blackford intended to discriminate against the plaintiff as he terminated him for refusing to perform this job without the customary additional compensation in addition to his other tasks. Thus, no legitimate nondiscriminatory reason has been articulated by this defendant. This was an inherently discriminatory assignment made by this supervisor. Even in the absence of direct evidence of discrimination, which I have found in this case, it is obviously clear from this record that plaintiff is entitled to relief. I specifically reject Blackford's testimony regarding the conversation in which he terminated Mr. Butler.

Immediately after advising the plaintiff that he was terminated, Blackford left the office where the conversation occurred and went into the shop. He took Butler's picture off the wall. Butler requested the opportunity to speak with Laney, but was told to get off the premises. Upon Laney's arrival, Butler tried to talk to him to explain what occurred. After a very brief conversation, Laney informed the plaintiff he had to stand by his supervisor and the termination was upheld. Plaintiff returned the next day with a friend and was able to pick up his tool chest.

Plaintiff was replaced in this position, lubeman/apprentice mechanic, by David Young, a white man. David Young was succeeded by Robert Atkinson, a white man, as a lubeman/apprentice mechanic.

Plaintiff's race or opposition to unlawful employment practices was a substantial or motivating factor in his assignment of the tasks and in his discharge by Richard Blackford. Plaintiff would not have been terminated absent consideration of his race of his opposition to unlawful employment practices evidenced by his complaints to Laney and Blackford. I find that the defendant terminated plaintiff due to racial discrimination. The reason offered by defendant for the employment decision, insubordination or refusal to answer a question, was pretextual and ludicrous.

I find competent substantial direct evidence of a discriminatory intent by the defendant in this case. The finding of racial harassment alone is sufficient to place a more onerous burden on the defendant. The record is replete with evidence of unwanted slurs, jokes and demeaning treatment of plaintiff and other black employees. This was all made known to the highest level of management, including Laney. Blackford, a manager in a position of authority himself, was involved in this harassment directly. I find Laney was not directly involved, but at least condoned the actions by failing to take effective action. Blackford assigned plaintiff demeaning tasks, condoned the harassment he saw by plaintiff's co-workers, and terminated the plaintiff for refusing to immediately answer his question and for refusing to accept an inherently discriminatory assignment. A number of facts support this conclusion, such as the failure to effectively curtail the slurs and jokes, the persistent denial throughout this litigation of the existence of any mechanic's apprentice position, the lack of any investigation whatsoever into the harassment, the lack of discipline of offending employees and, finally, the acceptance of the plaintiff's resignation without inquiry by Mr. Laney.

## LEGAL DISCUSSION

My job is to make a sensitive inquiry into direct and circumstantial evidence of discrimination offered by this plaintiff in order to determine if the facts so proved

allow a legally permissible inference of discriminatory intent. The Court is mindful of certain well-honored legal principles, including the fact that a plaintiff must establish a prima facie case of discrimination, either via direct or circumstantial evidence.

 It is necessary to prove discriminatory intent in a disparate treatment case such as this. Title VII prohibits racial discrimination involving the terms and conditions of employment. Terms and conditions include the psychological as well as the economic impact of a job on an employee. *Henson v. City of Dundee*, 682 F.2d 897, 901 (11 Cir.1982).

### RACIAL HARASSMENT

 On the issue of racial harassment, I enter the following findings of fact and conclusions of law:

1. A racially discriminatory atmosphere existed at the workplace of defendant while plaintiff, a member of a protected minority, was employed.

2. An abusive, unwelcome and intolerable atmosphere was created and thus, plaintiff's terms and conditions of employment were adversely affected. ·

3. Coral Volkswagen had knowledge of the racially discriminatory atmosphere fostered by rank and file employees and by its supervisors, and condoned this atmosphere.

4. Any alleged remedial actions by Coral Volkswagen were insufficient and not in keeping with the abusive conditions that existed. Indeed, this Court reasonably infers that based upon the feeble efforts taken here that the defendant knew those efforts would be insufficient and would make no dent on this atmosphere.

5. Defendant's allegations that this case is similar to *Vaughn v. Pool Offshore Co.*, 683 F.2d 922 (5 Cir.1982) are unfounded. Both cases involved industries where male interaction sets a distinctly rougher tone to the work environment. However, unlike the plaintiff in *Vaughn*, Mr. Butler did believe he was singled out for harassment, which was racially motivated. Mr. Butler did not participate in any of these pranks himself. The subjective inquiry suggested by *Vaughn* mandates the contrary conclusion here.

6. A hostile environment existed at defendant's workplace for plaintiff and other black employees in violation of Title VII. *Henson v. City of Dundee*, 682 F.2d 897 (11 Cir.1982); *Bundy v. Jackson*, 641 F.2d 934 (D.C.Cir.1981). This is a separate and distinct violation of the law from that noted below.

### DISCRIMINATORY TERMINATION

 On the issue of discriminatory termination, I enter the following findings of fact and conclusions of law:

1. The sole reason for plaintiff's termination was race. This decision was made by Blackford and condoned and ratified by Laney.

2. The defendant's proffered reason for termination, insubordination, was a pretext.

3. The defendant violated its own objective policy requiring fairness as expressed in its manual.

 In summary, the present case is analogous to *Walker v. Ford Motor Company*, 684 F.2d 1355 (11 Cir.1982), with the exception that the present situation presents a more egregious situation. Here there was substantial direct and circumstantial evidence of discrimination. By accepting the plaintiff's testimony and by rejecting that of Blackford, direct evidence of racial motivation existed. Again, the findings of racial harassment in violation of Title VII constitutes sufficient direct evidence of a discriminatory intent to shift the burden of persuasion regarding the termination from plaintiff to defendant. *Lewis v. Smith*, 731 F.2d 1535, 1537–9 (11 Cir. 1984). The burden is on the defendant to show by a preponderance of the evidence that plaintiff would have been fired absent the discrimination. *Lewis* at 1539. As I have found above, it could not prove anything of the kind.

Moreover, in this case there is also strong circumstantial evidence, even if di-

rect evidence did not exist. The defendant's own policy manual sets the standard by which it should be hoisted on its own petard, which I conclude it should.

Consequently, even absent the direct evidence found by this Court, plaintiff would prevail. If the circumstantial evidence test were applied, I have found that a prima facie case was made by plaintiff and defendant has failed to articulate a legitimate non-discriminatory reason for the termination. *Texas Department of Community Affairs v. Burdine,* 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981); *Walker v. Ford Motor Co.,* 684 F.2d 1355 (11th Cir. 1982). Under any level of scrutiny, the proffered reason for the firing was discriminatory.

The paramount question is whether the defendant intentionally discriminated against this plaintiff and the answer is a resounding "yes."

A hostile and offensive environment, based on race, which created an arbitrary barrier at the workplace cannot be condoned by a United States District Court. Here Felix Butler ran a gauntlet of racial abuse in return for the privilege of being allowed to work and make a living. This was demeaning to the plaintiff and created an atmosphere which can only be described in the harshest terms, which included racial epithets on a daily basis. This Court will not condone this action. Accordingly, I find for the plaintiff, Felix Butler on Count I.

■ As far as Count II is concerned, 42 U.S.C. § 1981, I direct a verdict, based on the statute of limitations, in favor of the defendant, Coral Volkswagen. See, *McGhee v. Ogburn,* 707 F.2d 1312 (11th Cir.1983).

## RELIEF

■ The plaintiff shall be reinstated to the position of lubeman, with the caveat that he be considered for promotion to mechanic or technician by testing or evaluation at the earliest possible time. He should be afforded all possible training opportunities to allow him to move into the position of technician which would include both formal training programs provided by Volkswagen of America and the opportunity to learn mechanic's skills on the job by working with existing technicians at Coral Volkswagen. The Court is aware of the fact the plaintiff may be physically unable to perform those duties at the present time and will not order the plaintiff to be reinstated into a position where he is required to perform physically demanding tasks until he personally expresses the opinion that he is able to do such work. Until that point is reached, the defendant will not have to rehire him.

■ Plaintiff is entitled in this Court's opinion to back pay less money received in the interim in mitigation. It has been somewhat difficult for this Court to calculate the back pay and in doing so, I have taken into consideration the fact that this back pay, of course, must be reduced by the amount earnable with reasonable diligence. I have also taken into consideration the plaintiff's work history, the issue of inflation and other factors, such as his health, and I have attempted to do justice by arriving at a figure based on all these calculations. It is this Court's viewpoint that it will award an interim amount of back pay of $28,000.00 to the plaintiff.

■ Moreover, an award of prejudgment interest is appropriate in this case. Due to the above considerations utilized in calculating this back pay award and due to the above findings made by this Court, prejudgment interest shall run from the day after plaintiff's termination, August 30, 1979, on the entire back pay award at the rate of twelve percent (12%) per annum, compounded on a quarterly basis.

■ Defendant shall be permanently enjoined from discriminating against black persons or otherwise adversely affecting the employment status of the plaintiff or others similarly situated on account of race. *Carmichael v. Birmingham Saw Works,* 738 F.2d 1126, 1136 (11 Cir.1984). The defendant's managerial staff shall at-

tend equal employment opportunity related human resource development training classes as soon as practicable and shall notify this Court of compliance by filing certificate of completion, signed by the individual or organization providing such training for each employee attending. The general manager shall raise affirmatively the subject of racial harassment and discrimination with all of his employees and inform all employees that racial harassment and discrimination violates Title VII of the Civil Rights Act of 1964, the Florida Human Relations Act, and the policy of defendant itself. Moreover, a copy of this order shall be posted conspicuously in Defendant's workplace in locations where notices to employees are customarily posted for a period of sixty (60) days. Any employee seeking a copy of this Order shall be provided with one.

Further, the defendant shall institute a grievance procedure in accordance with its own policy manual which shall be designed to swiftly and effectively assure that racial harassment is eradicated. This grievance procedure shall be written in consultation with counsel for plaintiff and provided to all employees. It shall establish a system whereby harassed employees may complain to the general manager immediately and confidentially. The general manager shall be required by this grievance procedure to promptly take all necessary steps to investigate and correct any harassment or discrimination, including warnings and appropriate discipline directed at the offending party. Further, defendant shall seek to generally develop other means of preventing harassment in its work place. *See Bundy,* at 947.

The Court retains jurisdiction to monitor this injunction, upon proper motion, to assure that no discrimination occurs in the future.

The plaintiff shall be entitled to all costs of this action and to reasonable attorneys' fees. The Court retains jurisdiction to award reasonable attorneys' fees and costs.