EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, Plaintiff,

v.

FLC & BROTHERS REBEL, INC., Defendant.

No. 86–0040–H.

United States District Court, W.D. Virginia, Harrisonburg Division.

June 29, 1987.

Debra M. Lawrence, Trial Atty., EEOC, Baltimore, Md., Kenneth M. Sorenson, Asst. U.S. Atty., Roanoke, Va., for plaintiff.

Glenn M. Hodge, Douglas L. Guynn, Wharton, Aldhizer & Weaver, Harrisonburg, Va., Thomas H. Tockwood, Winchester, Va., for defendant.

## MEMORANDUM OPINION

MICHAEL, District Judge.

This is a sex discrimination cause of action brought by the Equal Employment Opportunity Commission ("EEOC" or "Commission") on behalf of Christina M. Besares, against the defendant, FLC & Brothers Rebel, Inc. ("FLC"). This court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1337, 1343, and 1345 (1982). The jurisdictional prerequisites to filing suit have been satisfied based upon the filing of a timely charge of discrimination, timely notification to defendant of the charge of discrimination, the Commission's investigation of the charge of discrimination, and issuance of a determination, and the Commission's attempted conciliation with defendant. Accordingly, this action is authorized under § 706(f)(1) and (3) of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–5(f)(1) and (3) (1982) (the "Act"). This court conducted a bench trial in the above-styled proceedings on April 8–9, 1987. The parties have submitted their proposed findings of fact and conclusions of law; accordingly, this matter is ripe for determination.

FLC is a Virginia corporation which operates a nightclub, restaurant, and coffee shop in Winchester, Virginia. Since at least September 1, 1983, defendant has con-

tinuously and does now employ fifteen or more employees for each working day in each of twenty or more calendar weeks within the meaning of § 2000e(b), (g), and (h) of Title VII. The sole stockholders of FLC are Charles Caldwell, Fong L. Caldwell, Mrs. Caldwell's father, and Mrs. Caldwell's two brothers. Charles Caldwell and his wife, Fong L. Caldwell, are the only owners of FLC who are active participants in the management of the restaurant and nightclub facility. Charles Caldwell is the president of FLC and Fong Caldwell is the Treasurer. In 1983 the coffee shop operated from 6:00 a.m. until 12:00 midnight, and the dining room was open from 5:00 p.m. to midnight. A small bar known as the Rebel Bar, adjacent to the dining room, was open the same hours as the dining room, and the cabaret lounge operated from 5:00 p.m. until 2:00 a.m., with live entertainment six nights each week. A kitchen serves all three facilities—the coffee shop, dining room, and the cabaret lounge.

FLC's management consists of a general manager for overall management of the operation, who reports to Charles Caldwell. Under the general manager are a morning supervisor for the coffee shop, an evening supervisor for the coffee shop, dining room, and Rebel Bar, a kitchen supervisor, and a supervisor for the cabaret lounge. On September 1, 1983, when FLC began operations, Charles O'Brien was supervisor of the cabaret lounge. In October O'Brien was removed from that position and Thomas Marple, the assistant supervisor, acted as interim supervisor until November 7, 1983. When Michael Palmer was employed as supervisor of the cabaret lounge, Marple returned to his former position as assistant supervisor. Palmer did not have the authority to hire or fire subordinates; he could only make recommendations on these matters. Palmer was not liked by his subordinates because they considered him unqualified for the job and they thought he did a poor job performing his duties. Palmer also made sexually suggestive statements about women that many of the female employees found offensive. Palmer was characterized by female witnesses who were employees of FLC as "cocky," "a ladies man," that "he thought he was God's gift to women," and "confused." Palmer was unavailable to testify, because he apparently committed suicide some years ago.

On November 7, 1983, Palmer's first day of employment as supervisor of the cabaret lounge, he had an incident or run-in with Thomas Marple. During this altercation, it is clear that Thomas Marple used foul language toward Michael Palmer, based upon the testimony of Barbara Beamer. Michael Palmer reported the incident to Charles Caldwell, saying that Marple did not want to follow his instructions. Caldwell has alleged that in his opinion Palmer did not report Marple as being "insubordinate," but Caldwell knew from statements made by the restaurant's general manager, James C. McGoff, that Marple was sufficiently upset that McGoff had recommended that he take a couple of days off to "cool down." Thomas Marple was not discharged for this incident with Michael Palmer. Plaintiff has argued that this court should find that Marple was not discharged despite having spoken foul language directly in front of Mr. Caldwell, based upon the deposition testimony of Marple. However, this court finds some of the testimony of Marple to be exaggerated, and therefore somewhat lacking in credibility. For example, Marple testified to having thrown Palmer some fifteen feet down a hallway, when other witnesses assert that the distance of the hallway was no where near that length. Likewise, the court has serious doubts that Marple used the language which he now asserts he used in front of Caldwell, a man of exceedingly mild demeanor. However, the testimony of Caldwell that he did not consider firing Marple because Palmer did not allege him to be insubordinate is also incredible, given that news of the altercation between Palmer and Marple was widespread among FLC employees. The court finds that Marple physically confronted Palmer, and used foul language, but finds it unlikely that he did so in front of Caldwell.

In June 1983, Christina M. Besares, the complaining party in this action, was hired as a bartender for the cabaret and Rebel

rooms for Duff's Rebel Restaurant. She continued her employment under defendant's management when FLC took over the operation of the restaurant on September 1, 1983, earning an hourly rate of $3.50 plus gratuities, and working thirty hours per week. Both parties agree that throughout her employment with Duff's Rebel and with FLC, Besares performed her job satisfactorily, and had a good working relationship with her co-workers and supervisors.

Late in the afternoon of December 14, 1983, as Christina Besares was setting up the bar, she was approached by Michael Palmer who suggested that she rub up against his sexual organ, using terms generally considered vulgar and sexually suggestive. Given the widespread dislike of Michael Palmer among the female employees, and the frequency with which he made sexual advances both to customers and employees of FLC, this court finds Besares' testimony regarding this incident to be credible. This court further finds the testimony of Ruth White, who overheard some of the louder portions of the altercation between Besares and Palmer, yet who witnessed neither the beginning nor the end of the altercation, to be also credible. White testified that during the middle of an ongoing argument, Palmer told Besares to get off her rear end and get to work, again using vulgar language. According to White, Besares replied with foul language. Under these circumstances, the court finds Besares' use of foul language in response to sexual harassment and her refusal to work for Palmer to be reasonable. The court notes that after the altercation, Besares did continue her job setting up the bar. After the incident, Palmer reported Besares to Caldwell, complaining that Besares was insubordinate. When called into Caldwell's presence, Besares apologized for the use of her foul language, but stated that it was in response to sexual harassment by Palmer. Caldwell called in Karen Fairbanks who confirmed Palmer's sexually harassing behavior, whereupon Caldwell discharged Palmer from his employment.

The next day Caldwell approached Ruth White, after discovering she had overheard parts of the preceding day's dispute. White relayed the language used by Besares, upon Caldwell's assurances that no one would be hurt by her disclosures. On December 16, 1983, Caldwell dismissed Besares from her employment, for the use of "unladylike" language. Caldwell alleges that White's version of the incident corroborated that of Palmer, which led him to believe that Besares had lied about the incident in question. Furthermore, Caldwell alleged that the statements by White led him to believe Besares had been insubordinate and that the language used by Besares was more "vile" than that admitted to by Besares. Caldwell now states that Besares' lying as to the account of the incident and her insubordination were corroborating reasons for her discharge.

The court finds Caldwell's position to be unconvincing, because in all statements made both to Besares and to the EEOC at times before Caldwell contacted legal counsel, he gave only "unladylike" language as the reason for Besares' discharge. Furthermore, Caldwell loses credibility for his inability to remember the "vile" words used by Besares, having admitted upon cross-examination that certain common words used in foul language would not justify Besares' discharge. In fact, the testimony of White revealed that in her memory Besares used only those words which Caldwell had admitted would not be sufficiently "vile" to justify discharge. Furthermore, the testimony of White indicated that Besares was unwilling to accept orders given in the gross language used by Palmer, but did not reveal that Besares refused to do her work.

Although it is difficult to reconcile the conflicting testimony in this case, this court finds it unreasonable to expect an employee to be subordinate to orders given in the language used by Palmer, and further unreasonable for Caldwell to use as a basis for discharge the fact that Besares was unwilling to work with a supervisor who was fired for his harassing conduct. Furthermore, it was unreasonable of Caldwell to expect Besares to know the limits of her ability to use foul language in return for

verbal harassment, given his own inconsistencies regarding the appropriate reaction to harassing behavior, and given the fact that Caldwell admits that certain foul language was to be expected in a nightclub workplace. However, the court notes that none of the witnesses testified that the nightclub atmosphere of the place of employment extended into the working relationship of FLC's employees. In other words, because customers expected to meet persons of the opposite sex and possibly engage in conduct which would be unacceptable at a place of employment, the employees reasonably did not expect harassing conduct between the employees themselves. This court further notes that employees of FLC were not informed of any alleged policies against sexual harassment or other types of discrimination, and any explicit policies against foul language in the workplace, through meetings or otherwise. Likewise, the employees were not given any explicit directions as to the procedures to be followed in the case of harassing conduct. The court finds that the Besares' failure to communicate Palmer's previously harassing treatment was understandable, given the fact that her attempt to communicate information regarding Palmer's harassing conduct toward customers was not acted upon by her supervisor at FLC, namely, Jim McGoff.

In March 1984, following her discharge, despite Besares' reasonable efforts to obtain employment, Besares' automobile was repossessed due to her inability to continue monthly payments on her automobile loan. After Christina Besares was fired from her employment with FLC she applied for unemployment compensation with the Virginia Employment Commission and was initially denied benefits because of her misconduct. On appeal, she was granted benefits when the hearing examiner held that her claim of sexual harassment mitigated her misconduct of using profane language to a supervisor. In June 1984, Besares' unemployment benefits were terminated when she refused to take a job as a bartender at the Wayside Inn at Middletown, Virginia. Besares asserts, which assertion is uncontradicted and the court therefore finds, that she refused the job referral because of her lack of transportation and inability to travel to the job, and because she would have had to work more days per week than she had worked at FLC, which would interfere with her current child care arrangements and preferences.

*Conclusions of Law*

This action is governed by Title VII of the Civil Rights Act, 41 U.S.C. § 2000e *et seq.*, which makes it unlawful for an employer to discriminate against any individual with respect to his compensation, terms, or conditions of employment because of such individual's race, color, religion, sex, or national origin. This court has jurisdiction under 28 U.S.C. §§ 1331, 1337, 1343, and 1345 (1982). FLC, having more than fifteen employees, is an employer covered by Title VII pursuant to § 2000(b) of the Act.

In a Title VII case, the plaintiff must prove intentional discrimination and this burden remains with the plaintiff throughout the trial. *United States Postal Services Board of Governors v. Aikens,* 460 U.S. 711, 103 S.Ct. 1478, 75 L.Ed.2d 403 (1984); *Johnson v. Uncle Ben's, Inc.,* 657 F.2d 750 (5th Cir.1981). The court in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), set forth the burden of proof in a discrimination case as follows: (1) The plaintiff has the burden of proving by the preponderance of the evidence a *prima facie* case of discrimination. If she is relying on circumstantial evidence, the plaintiff must show that she is in a protected class and that she was treated differently from a similarly situated person who is not in a protected class. (2) If the plaintiff succeeds in presenting a *prima facie* case, then the burden shifts to the defendant to articulate some legitimate, non-discriminatory reason for the plaintiff's treatment. (3) The plaintiff must show by a preponderance of the evidence that defendant's stated reasons were not the true reason but were a pretext for discrimination.

In this case, it is clear that Michael Palmer's sexual advances upon Christina

Besares were unwelcome and constituted sexual harassment. See e.g., *Bundy v. Jackson*, 641 F.2d 934 (D.C.Cir.1981); *Meritor Savings Bank FSB v. Vinson*, 477 U.S. 57, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986). Despite the lack of credibility in the story of the incident with Thomas Marple as related by Marple, it is clear that knowledge that Marple had hit or scuffled with Palmer was widespread among employees, and that Caldwell knew the seriousness of the incident. Likewise, it is apparent that Caldwell knew of and tolerated certain foul language in the workplace. In this case, Besares' discharge for unladylike conduct constituted a *prima facie* case of intentional discrimination, and Caldwell's later allegations that he would nevertheless have committed the challenged employment action due to Besares' lying and insubordination are pretextual. Therefore, it is the opinion of this court that the plaintiff has met its burden of proving that the defendant's actions were discriminatory and in violation of Title VII. See e.g., *EEOC v. Old Dominion Security Corp.*, 41 F.E.P. Cases, 612 (E.D.Va.1986), *aff'd in part and remanded on other grounds*, 816 F.2d 671 (4th Cir.1987).

This determination is further buttressed by the fact that Caldwell's use of the phrase "unladylike" language as a reason for her discharge constitutes some direct evidence of discrimination. It is apparent from Caldwell's testimony that it is his view that ladies are held to a somewhat higher standard than men, since it is clear that foul language was tolerated by him at FLC. Because Besare's status as a woman motivated, at least in part, Caldwell's decision to discharge Besares, a direct violation of Title VII may be found. Upon an express indication that an improper motive influenced an employment decision, proof of the employer's motive through circumstantial evidence is unnecessary. Rather, the burden of persuasion in this case shifts to the defendant, who must prove that absent discriminatory reason, Besares would nevertheless have been fired. *Smallwood v. United Air Lines, Inc.*, 728 F.2d 614 (4th Cir.1984) (ADEA Action); *Wright v. Olin Corp.*, 697 F.2d 1172 (4th Cir.1982); *Lee v.*

*Russell County Bd. of Education*, 684 F.2d 769, 774 (11th Cir.1982). Using either basis, this court finds the reasons proffered by Caldwell to be pretextual, and that the EEOC has met its burden of proof.

As the prevailing party, Besares is entitled to "make-whole" relief, to restore her to the position she would have occupied but for the unlawful discrimination. *Albemarle Paper Co. v. Moody*, 422 U.S. 405, 95 S.Ct. 2362, 45 L.Ed.2d 280 (1975). This court will approve and adopt the back pay calculation performed by the EEOC as demonstrated in plaintiff's exhibit 23, 23a-f. This formula applied Besares' interim earnings from the date of discharge to the date of trial and applied them against projected earnings based upon thirty hours employment each week between January 1984 and April 8, 1987. The projected rate of pay was also increased by $.15 every six months, based upon the rates of increase of similarly situated employees. Besares' projected total tips were determined by calculating the percentage of her tips received in 1983. Quarterly compounded interest was then applied to the projected earning. This method of back pay computations is widely accepted by the courts. See, *EEOC v. Eazor Express Co.*, 499 F.Supp. 1377, 1385–6 (W.D.Pa.1980); *Butler v. Coral Volkswagon, Inc.*, 629 F.Supp. 1034, 1041 (S.D.Fla.1986). Further the EEOC's use of the adjusted prime interest rate used by the Internal Revenue Service is also widely accepted by the courts. See, *EEOC v. Wooster Brush Co. Employees Relief Assoc.*, 523 F.Supp. 1256 (N.D.Ohio 1981), *aff'd in part*, 727 F.2d 566, 678–9 (6th Cir.1984); *EEOC v. County of Erie*, 751 F.2d 79 (2d Cir.1984); *Butler v. Coral Volkswagon, Inc., supra*; *Walters v. City of Atlanta*, 610 F.Supp. 715 (N.D.Ga.1985), *aff'd in part*, 803 F.2d 1135 (11th Cir.1986); *Lattimore v. Oman Construction Co.*, 41 F.E.P. cases 776 (N.D.Ala.1985); *Amos v. Corporation of Presiding Bishop of Church of Jesus Christ of Latter Day Saints*, 618 F.Supp. 1013 (D.C.Utah 1985), *appeal pending*, — U.S. ——, 107 S.Ct. 396, 93 L.Ed.2d 350 (1986).

■ While defendant has argued that none of his current employees is making the rate of pay as calculated by the EEOC due to the increases applied, this court finds that $.15 increases were in effect at the time of Besares' discharge, and defendant has not demonstrated that Besares would not have received these semi-annual increases. This court also agrees with the EEOC that Besares is entitled to the equity interest in her automobile which was repossessed subsequent to her discharge due to her inability to make the monthly payment. However, the EEOC has not proffered the actual loss Besares incurred in losing her equity interest in the car, as compared to the interest she was paying on the loan. For this reason, the sum of the monthly payments Besares had made prior to the repossession is not sufficient information to determine her damages.

■ Having decided that Besares is entitled to "make-whole" relief for the loss of her automobile, the court cannot accept defendant's argument that Besares' failure to take a job opportunity, which resulted in the termination of her Virginia Employment Commission unemployment benefits, should terminate defendant's back pay liability. This court accepts Besares' explanation that due to the loss of her automobile she could not travel the distance required by the job referral from the VEC, and that no form of public transportation was available to transport her to and from that job. Since the loss of Besares' automobile was due to the conduct of the defendant, FLC cannot benefit from her resulting difficulties in accepting employment that is outside the range of her ability to use public transportation.

This court also awards to Besares the amount of medical expenses she incurred while unemployed, in the amount of $250. *Boomsma v. Greyhound Food Management, Inc.*, 639 F.Supp. 1448 (W.D.Mich. 1986); *EEOC v. Rath Packing Co.*, 40 F.E.P. cases 576 (S.D.Iowa 1979), *rev'd in part on other grounds*, 787 F.2d 318 (8th Cir.1986), *cert. denied*, — U.S. —, 107 S.Ct. 307, 93 L.Ed.2d 282 (1986).

Furthermore, it is the decision of this court that defendant, FLC Brothers and Rebel Inc., should offer reinstatement to Besares at the latest rate of pay as calculated by the EEOC and this court. 42 U.S.C. § 2000e–5(g). This court is of the opinion that there is nothing unique or unusual about the position of bartender, or the particular circumstances existing at FLC, which would indicate that reinstatement is inappropriate. The testimony establishes that with the exception of the incident which resulted in her termination, the defendant was apparently satisfied with Besares' ability to fulfill her duties. There is nothing of record which suggests that unconscionable difficulties would be presented as a result of Besares' reinstatement, and Besares is entitled to be awarded this form of relief.

■ In considering the EEOC's request for an injunction, this court notes that the Commission has brought this cause of action under § 706 of Title VII, specifically, 42 U.S.C. § 2000e–5(f)(1), in order to prevent FLC from engaging in an unlawful employment practice as set forth in § 2000e–2 or 2000e–3 of Title 42. This court agrees with the Commission's assertion that this cause of action is distinguishable from a pattern or practice cause of action brought under § 707 of Title VII, § 2000e–6. Since this court is authorized to grant an injunction if it finds that FLC has "intentionally engaged in ... an unlawful employment practice" under § 2000e–5(g), the fact that EEOC has not alleged a pattern of discriminatory activity does not prevent the remedy sought. Furthermore, this court is concerned that there is evidence that many waitresses and other female employees of FLC were subject to the unwelcomed sexual advances of Michael Palmer, yet none of them appear to have reported these activities to Mr. Caldwell. Likewise, it appears that intermediate managers saw the activities of Palmer, yet failed to obtain disciplinary action against him.

Caldwell's assertion that all employees were notified of FLC's policy regarding discrimination and other illegal employ-

ment practices, through meetings which were conducted for that purpose, was contradicted by the testimony of every other witness, including those on behalf of the defendant. No employee ever remembered a stated policy against discriminatory acts or a stated course of conduct for remedying such acts, nor were there any stated prohibitions against the use of foul language in the workplace. For these reasons, the court cannot accept the unsubstantiated assertions of Mr. and Mrs. Caldwell that employees are now well-informed on these matters. Therefore, the court will grant the Commission's request for an injunction, enjoining defendant from further engaging in practices which discriminate against persons because of their sex. The defendant will be required to post notices advising its employees that sexual harassment and sex discrimination are violative of Title VII and will not be tolerated. However, the proposed notice supplied by the Commission in its exhibit A of plaintiff's proposed findings of fact and conclusions of law, while sufficient in all other respects, is overly restrictive in its last paragraph. This court will not require the defendant to include the paragraph regarding the reinstatement of Christina Besares, as stated on page 2 of said exhibit A.

*Conclusion*

For the foregoing reasons, it is the decision of this court that judgment should enter in favor of the plaintiff. An appropriate Order shall this day issue.

## ORDER

For the reasons stated in the accompanying Memorandum Opinion, it is this day

### ADJUDGED AND ORDERED

as follows:

1. Judgment shall be, and it hereby is, entered in favor of the plaintiff and against the defendant.

2. The defendant shall pay to Christina M. Besares, the charging party, backpay and interest in the amount of $21,612.00.

3. The defendant shall pay to Christina M. Besares reimbursement in the amount of $250.00 for medical expenses incurred by Besares while unemployed.

4. Within thirty (30) days after the entry of this Judgment Order, defendant shall offer reinstatement to Christina M. Besares to the position of bartender at the rate of $4.70 per hour. If there is any delay in the making of an offer of reinstatement by the defendant, for whatever reason, the required rate of pay shall increase $.15 per semi-annual period after the year 1987.

5. The defendant shall be, and it hereby is, enjoined from further engaging in any practice which discriminates against women due to their sex. Appropriate notice shall be given to all employees of their rights under the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* (1982), and advising the employees that sexual harassment and sex discrimination will not be condoned, as discussed in the accompanying Memorandum Opinion.

6. Within thirty (30) days after the entry of this Order, plaintiff shall tender to the court appropriate evidence of the actual equity interest Christina M. Besares had in her automobile at the time of its repossession. Defendant shall note its objections to said evidence, if any, within ten (10) days thereafter. Plaintiff's reply, if any, shall be due within ten (10) days after the filing of defendant's objections.