Doris **STAMEY**, Plaintiff–Appellee, Cross–Appellant,

v.

**SOUTHERN BELL TELEPHONE & TELEGRAPH COMPANY,** Defendant–Appellant, Cross–Appellee.

No. 87–8494.

United States Court of Appeals, Eleventh Circuit.

Nov. 4, 1988.

Keith W. Kochler, Southern Bell Tel. & Tel. Co., Atlanta, Ga., for defendant-appellant, cross-appellee.

James Lee Ford, Ford & Haley, Atlanta, Ga., for plaintiff-appellee, cross-appellant.

Before HILL and EDMONDSON, Circuit Judges, and WISDOM *, Senior Circuit Judge.

WISDOM, Senior Circuit Judge:

This case requires this Court to consider once again when an employer's business justification for terminating an employee is a pretext for age discrimination. Doris Stamey alleges that Southern Bell, her employer for 38 years, had placed older workers in a nonmanagerial job category destined to become obsolete; younger workers doing comparable work were given managerial jobs insulated from reductions in the workforce. She sued under the Age Discrimination in Employment Act (ADEA),[1] contending both that Bell had unfairly terminated her and that it had unfairly denied her a promotion into the managerial position. The jury found for Stamey on her termination complaint, but the judge granted a directed verdict on her promotion claim. Bell filed a motion for judgment notwithstanding the verdict or, in the alternative, for a new trial. The trial judge denied Bell's motion. Bell appeals. Stamey cross-appeals the judge's directed verdict on her promotion claim and part of the remedy. We affirm the judge's denial of Bell's motions and reverse as to Stamey's cross-appeal.

I.

Doris Stamey began her employment with Southern Bell as a long-distance operator in June 1943 when she was eighteen years old. After 10 months she was assigned to a training position, to train long-distance operators on company techniques and equipment. In 1955 Mrs. Stamey was assigned to the position of PBX Operator. In this position she visited customers' places of business to explain how Southern Bell's services might best be used by the customer and to instruct the customers on the use of their Private Board Exchanges. This job required both in-depth knowledge of Bell's services and the ability to adapt Bell's services to the customer's workplace. The record indicates that Stamey performed it well; the company assigned her to its best customers.

In 1973, Bell restructured its customer service system. It established two new job titles: "Service Advisor", a non-management position involving no direct customer contact, and "Chief Service Advisor", a managerial position supervising the Service Advisors and exclusively in charge of direct customer contact.[2] Almost every PBX In-

* Honorable John Minor Wisdom, Senior US Circuit Judge for the Fifth Circuit, sitting by designation.

1. 29 U.S.C. § 621 *et seq.*

2. In subsequent reorganizations, "Service Advisor" was renamed "Customer Instructor" and "Chief Service Advisor" became "Associate Su-

structor over the age of forty, including Stamey, became a Service Advisor. Stamey was then 48. After 1978, Bell gradually phased out Service Advisors by transferring them to other jobs. In 1981, Bell announced it would eliminate the position entirely. Stamey was then 56.

From 1973 until 1981, Stamey requested promotion to the Chief Service Advisor position but she was never promoted or offered the opportunity to train for the promotion. When Bell announced the elimination of the Service Advisor position, it offered Stamey the option of transfer to "any available equal or lower paying job". The jobs offered included entry-level receptionist, entry-level clerk, and typist.

In June 1981, Stamey filed charges of age discrimination with the EEOC. Several months afterward, Bell announced that it had reassessed its needs and determined that it needed *one* Service Advisor and that Stamey would be it. Stamey returned to work at Bell. Early on her first day back at work, she completed a form withdrawing her EEOC charges. Bell employees had already filled in the form except for her signature.

Six months later, in December 1982, Bell informed Stamey that it was eliminating her Service Advisor position. It then offered her early retirement or transfer to another job. Bell did not specify what job Stamey might take as an alternative to retirement, although it advised her that whatever job she took would pay less than the Service Advisor position.[3] She was told to consider her options during her month-long holiday that began at the end of 1982.

Stamey never learned what other jobs Bell was willing to offer her. The afternoon before her holiday began, two of her supervisors entered her office and requested that she turn over her keys. During her vacation, but before she had decided to take early retirement, a Bell employee called her at home to ask her to complete her retirement papers. Upon her return at

the end of her vacation, but (again) before she had made her decision, she found that her office and work had been assigned to a Chief Service Advisor transferred from another office. Stamey's supervisors had been aware of the impending arrival of this managerial employee when they took Stamey's keys.

Stamey signed her retirement papers that same month. On the form announcing her decision to retire, she listed her reason for retiring as, "No job offer, replaced by management person from South Carolina". Six months later, in June 1983, she filed a second complaint with the EEOC, charging that Bell discriminated against her because of her age and that Bell retaliated against her for filing her first complaint with the EEOC. The EEOC gave her a right to sue letter, and she filed this action in December 1983.

The district court directed a verdict for Bell on Stamey's charge that Bell failed to promote her to Chief Service Advisor because of her age. After a four-day trial, the jury found (1) that Bell's elimination of Stamey's Service Advisor position was a "constructive discharge"; (2) that Stamey was constructively discharged in retaliation for her filing of a complaint with the EEOC; (3) that Stamey was constructively discharged because of her age; and (4) that Bell was guilty of pay discrimination because the disparity in benefits between Service Advisor and Chief Service Advisor was determined by age rather than by any difference in work performed.

The district court entered judgment for Stamey accordingly. As part of her relief, the district court ordered that Stamey receive a nondiscriminatory salary from Bell until it reinstated her in a nonmanagement position comparable to the (now defunct) Service Advisor job. Bell then offered Stamey a nonmanagement job with the same pay as a Chief Service Advisor. She refused it, asking for a management position. The district court found her refusal "unrea-

pervisor, Service Advisor Complex". The duties of the two positions remained about the same.

3. Stamey would not have suffered immediate financial loss. Bell guarantees its employees their original salary for up to four years after transfer to a lower-paying job.

sonable" and terminated her right to the continuation of her salary.

Bell appeals the denial of its motion for judgment notwithstanding the verdict and a new trial, contending that there was a business justification for the restructuring and that Stamey was not qualified to be a Chief Service Advisor. Stamey cross-appeals, contending (1) that the district court should not have granted the directed verdict for Bell on the promotion claim; (2) that the district court should have ordered her reinstated as a Chief Service Advisor rather than reinstatement in a nonmanagerial position comparable to the (now defunct) Service Advisor job; and (3) that it was not "unreasonable" for her to decline reinstatement in a nonmanagerial job.

## II.

This court should approve Bell's appeal of its motions for judgment notwithstanding the verdict only if Bell has presented evidence on its behalf so compelling that "reasonable men could not arrive at a contrary verdict".[4] In determining whether Bell has met this standard,

> the court should consider all of the evidence—not just that evidence which supports the non-mover's case—but in the light and with all reasonable inferences most favorable to the party opposed to the motion.[5]

At each step, of course, we defer to the findings of fact reached in the trial court.[6]

As in other cases of employment discrimination, an action under the ADEA is a three-step process. First, the plaintiff must establish a prima facie case.[7] Second, the defendant has the burden of proving that legitimate, nondiscriminatory reasons controlled its decision.[8] Finally, the plaintiff then has the burden of demonstrating that the reasons advanced by the defendant were pretextual.[9]

### A. Stamey Presented A Prima Facie Case

A prima facie case under the ADEA contains four requirements: (1) the plaintiff must belong to the "protected group" consisting of employees between the ages of 40 and 64; (2) her status as an employee must be adversely affected; (3) she must be replaced by someone outside the protected group; and (4) she must be qualified for the job denied her.[10] Bell denies that Stamey was discharged; that she was replaced; and that she was qualified to work as a Customer Service Advisor. In short, Bell contends that Stamey has failed to establish the second, third, and fourth components of a prima facie case.

### 1. Stamey Was Adversely Affected

Bell avers that Stamey chose retirement and that, consequently, she was not terminated. Bell's evidence consists only of several admissions from Stamey that she preferred retirement to the jobs available to her. Stamey counters with ample evidence that she was terminated.

Stamey testified that she found the particular jobs Bell offered her before she filed her first EEOC complaint (entry-level receptionist, entry-level clerk, typist) "humiliating" and "insulting". The second time Bell tried to eliminate her Service Advisor job, it did not specify the other jobs she might take as an alternative to early retirement; it said only that they would be lower paying jobs. In the light of Bell's earlier offers, a jury could reason-

---

4. *Boeing Co. v. Shipman*, 411 F.2d 365, 374 (5th Cir.1969) (en banc).

5. *Id.*

6. *See, e.g., Reynolds v. CLP Corp.*, 812 F.2d 671, 674–75 (11th Cir.1987).

7. *Goldstein v. Manhattan Ind. Inc.*, 758 F.2d 1435, 1443 (11th Cir.), *cert. denied*, 474 U.S. 1005, 106 S.Ct. 525, 88 L.Ed.2d 457 (1985).

8. *See, e.g., Archambault v. United Computing Systems, Inc.*, 786 F.2d 1507, 1512 (11th Cir. 1986).

9. *Id.*

10. This standard for a prima facie case derives from *McDonnell Douglas Corporation v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed. 2d 668, 677 (1973). *See, e.g., Reynolds*, 812 F.2d at 674 (applying *McDonnell Douglas* in ADEA case).

ably conclude that any job it would offer her would be demeaning to one with 38 years of experience in advising customers.[11]

Further, Stamey presented evidence that her supervisor demanded her office keys weeks before she was to make her "choice" about early retirement, that Bell did not eliminate her position as it contends but rather just changed the title, and that her replacement was already "at her desk, doing her work" before she had formally "chosen" to retire. From this evidence, a jury could reasonably conclude that Bell used direct coercion to force Stamey to "choose" retirement.[12]

In any event, Stamey can prevail even if the evidence does not support an inference that she was terminated or constructively discharged. The Act forbids far more than merely discriminatory discharge and hiring practices. It states:

It shall be unlawful for an employer—

(1) to fail or refuse to hire or to discharge any individual *or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment* because of such individual's age;

(2) to limit, segregate, or classify his employees in any way which would deprive or tend to deprive any individual of employment opportunity *or otherwise adversely affect his status as an employee,* because of such individual's age . . .[13]

A reasonable jury could conclude that Stamey's treatment came within these terms.

### 2. Stamey Was Replaced

■ Stamey presented evidence that upon her return to Bell after her December 1982 vacation, someone else was already "at her desk, doing her work". Bell responds that the employee Stamey observed was doing different work. A jury could reasonably have concluded that Stamey was replaced. In other parts of her case, she presented evidence establishing that Customer Service Advisors did the same work as nonmanagement Customer Advisors. Further, she testified that she observed the woman in her office doing the work she would have been doing had she not been terminated. Bell produced no counter-evidence.[14]

### 3. Stamey Was Qualified

■ Bell next disputes that Stamey has established the final prong of the *McDon-*

---

11. Employees may be constructively discharged by a demeaning demotion or transfer. *See Williams v. Caterpillar Tractor Co.,* 770 F.2d 47 (6th Cir.1985).

12. Bell makes much of a distinction between termination and "constructive discharge". Bell argues that Stamey must show she was terminated because she did not plead constructive discharge in her complaint. At oral argument, Bell's counsel suggested that "constructive discharge" complaints were appropriate when an employee offered "subjective" reasons for finding working conditions so difficult or unpleasant that she felt compelled to resign; "termination", he said, was appropriate where there were "objective" justifications for the employee's decision to leave a job. Bell presents neither authority nor reasoning for distinguishing the proof required for constructive discharge from that needed for termination.

A plaintiff alleging constructive discharge must establish that the terms and conditions of employment were so onerous that a reasonable person would feel compelled to resign. *See, e.g., Houghton v. McDonnell Douglas Corp.,* 553 F.2d 561 (8th Cir.1977), *cert. denied,* 434 U.S.

966, 98 S.Ct. 506, 54 L.Ed.2d 451 (1978). The reasonable person standard injects objectivity into a jury's deliberations over complaints of constructive discharge, thereby blurring the line between subjective and objective so much as to make Bell's distinction useless. In addition, we see little reason to deny Mrs. Stamey the fair inference from the evidence that she was constructively discharged simply because she did not plead it. Placing so much weight on the pleadings would run contrary to the broad remedial purposes of the ADEA and to the spirit of the Federal Rules of Civil Procedure. Finally, because the evidence supports an inference that she was terminated, Bell's argument amounts to nothing more than a squabble over wording.

13. 29 U.S.C. Section 623(a) (emphasis added).

14. Bell's argument foreshadows its contention that Stamey was not replaced, but that her position was eliminated as a result of changes in its business. Bell therefore asks this court to regard Mrs. Stamey's case under the tests applicable to work force reduction. This argument is discussed at greater length in Section IIB.

*nell Douglas* test.[15] It argues that Stamey was not qualified for promotion to the managerial "Chief Service Advisor" position. A reasonable jury could have concluded otherwise. Stamey presented evidence that she was already doing much of the same work as a "Chief Service Advisor". Much of Stamey's "nonmanagerial" work was clerical; one young manager admitted under cross examination that her "managerial" tasks were actually clerical in nature. Stamey proved herself capable of even the less mundane "managerial" chores. For example, one post-reorganization customer praised Stamey for a presentation she made after having had very little time to prepare; Stamey's supervisor was to have made the presentation but found she could not prepare herself in the short time allowed. These examples fit well into a larger pattern, where the Service Advisors trained the Chief Service Advisors and often advised them on a daily basis. The similarity in qualifications for the jobs may have grown out of one aspect of Bell's reorganization. The new Chief Service Advisors no longer visited customer's workplaces. Instead, employees of Bell's customers attended training sessions at Bell, then returned to their workplaces. In this system, the onus of adapting Bell's services to the customers' work environments shifted slightly to the trained employees of the customers; it was perhaps inevitable that the new Chief Service Advisors would have less reason to acquaint themselves with the intricacies of Bell's equipment than had the PBX Instructors who were by then their subordinates. The jury could conclude that Stamey established that the qualifications for the "Chief Service Advisor" position were not really higher than those for the "Service Advisors". This, considered with the evidence of general discrimination against older employees, provides a sufficient basis for the jury's verdict on age and pay discrimination. We therefore hold that Stamey did present a prima facie case that Bell discriminated against her because of her age.

### B. *Bell Did Not Rebut the Prima Facie Case*

■ Bell next argues that any adverse effect suffered by Stamey derived from legitimate, nondiscriminatory business decisions. Throughout the 1970's an increasing percentage of its customers turned to systems more sophisticated than the PBX systems familiar to Mrs. Stamey. The 1973 decision to bifurcate its customer service program reflected its anticipation of this trend, Bell avers.[16] As customers switched to newer machines, demand for advice on the older PBX models declined, giving Bell a legitimate, business reason to scale back that portion of its customer service operation. Bell contends that its concerns about changes in the system resulted in the force reduction that prompted Stamey's first EEOC complaint in 1981 and again in 1982, when Bell notified Mrs. Stamey that it intended to eliminate her position entirely. In short, Bell argues, Mrs. Stamey was not replaced but was instead caught in a reduction in its workforce.

Bell here focuses myopically on its immediate decision to transfer or demote Mrs. Stamey and leaves in the background the restructuring of its workforce. Mrs. Stamey presented uncontroverted evidence that the former PBX Instructors were generally older. All of them became Service Advisors, non-management positions without customer contact. The new Chief Service Advisor positions were filled principally by younger new-hires. Stamey also presented evidence that as the 45 (generally older) Service Advisors were phased out, only five became Chief Service Advisors; all of those promoted were under 40. In fact, according to Stamey's evidence, since 1963, no nonmanagement employee over 50 in the PBX customer service program had been promoted to management and that, from 1973 to 1978, no nonmanagement em-

**15.** *See* n. 10.

**16.** This does not explain why one group consisted of nonmanagerial employees while employ-

ees in the other group were granted managerial status.

ployee over the age of 40 was promoted to management.

In response, Bell asserts only vague "business reasons" for the restructuring. In particular, Bell does not respond to Stamey's evidence that in practice, a Chief Service Advisor did not require higher qualifications than a Service Advisor.[17]

Bell's rebuttal argument can succeed only on a foreshortened horizon. A broader perspective reveals that Bell attempted to present a youthful image to its customers. Mrs. Stamey presented evidence that her inability to win promotion within Bell resulted directly from this earlier reorganization of Bell's customer service program. One witness testified:

> I don't think she [Stamey] was seriously considered for promotion because she did not fit with the image that they [Bell] were wanting to project of the department at the time ... There was a pattern set in the department whereby some of the older women were never ... seriously considered for promotion.

The effect of Bell's restructuring violates a central teaching of this Court's decisions in ADEA cases. An employer may not organize its workforce to expose older employees to reductions while insulating younger employees. In *Williams v. General Motors Corporation,*[18] Judge Hill correctly noted that an "employee-rotation plan that effectively shifted 'protected' workers into jobs likely to bear the brunt of a reduction in force" would signal age discrimination.[19] The strength of Stamey's evidence contrasts with the weakness of statistical evidence in *Goldstein,* where ap-

proximately half of the employees promoted in *Goldstein* (including Goldstein's own replacement) were over forty years old.[20] This Court rejected Goldstein's statistical evidence because it did not establish that the company had started a "youth movement".[21] Stamey has done so. We therefore conclude that Bell has not met its burden of rebutting Stamey's prima facie case. Accordingly, we affirm the trial judge's refusal to grant Bell's motion on Stamey's termination claim.

## C. Bell Retaliated Against Stamey

Bell also appeals the judge's refusal to grant its motion as to Stamey's retaliation claim. It denies any "settlement" of Stamey's first complaint. Stamey, however, offered evidence from which a jury could conclude that there was such a "settlement" and that Bell reneged on it. Until her 1981 EEOC charge, Bell insisted that the position of Customer Instructor (filled by Stamey and some fifty others) needed to be eliminated. After she filed the charge, however, Bell made a "reassessment" and came to the convenient conclusion that it would continue to need *one* Customer Instructor and that Stamey should be it. The very day that Stamey returned to her (now unique) job as Customer Instructor, she was presented with EEOC forms, already typed, withdrawing her charges against Bell.

Less than a year later, Bell's "need" for a lone Customer Instructor evaporated. Bell contends that "this was prompted by the anticipated transfer of business mar-

---

17. Bell also fails to address the proper argument. It stresses that there was no discrimination by age within the ranks of the Service Advisors. Mrs. Stamey does not contest this conclusion. She argues instead that older workers were excluded from the Chief Service Advisor category. The proper comparison, then, is not *among* the Service Advisors but *between* them and the Chief Service Advisors. *See, e.g., Lindsey v. Southwestern Bell Telephone Co.,* 546 F.2d 1123, 1124 (5th Cir.1977) (ADEA claims require comparison of employees selected for position with those available in the entire employee group).

18. 656 F.2d 120 (5th Cir. Unit B 1981).

19. 656 F.2d at 130 n. 15. *Williams* discussed the evidence a plaintiff must present to establish a prima facie case. Its discussion is nonetheless applicable. *See also McCorstin v. United States Steel Corp.,* 621 F.2d 749, 754 (5th Cir. Unit B 1981) ("[A] pattern of terminating older workers when a reduction in force occurred" allows the inference that an employer's nondiscriminatory reasons were pretexts for discrimination); *cf. McCuen v. Home Insurance Co.,* 633 F.2d 1150, 1150–51 (5th Cir. Unit B 1981).

20. 758 F.2d at 1444.

21. *Id.*

keting [including PBX service] to American Bell" as part of the AT & T divestiture. Stamey points out that the transfer of these functions did not actually occur until 1984. Whatever triggered the elimination of her job, the direct evidence discussed above strongly suggests that Bell thereafter unceremoniously pushed her into early retirement.

### III.

#### A. *The Trial Judge Erred In Ordering A Directed Verdict Against Stamey On Her Claim That Bell Illegally Failed to Promote Her*

█ Stamey can sue only for age discrimination violations occurring within 180 days of the filing of her June 1983 complaint with the EEOC.[22] Accordingly, to present the jury with the question of discriminatory refusal to promote, Stamey must show that she was passed over for promotion to Chief Service Advisor in favor of a younger employee in the 180 days before she filed her June 1983 complaint with the EEOC. The district court directed a verdict for Bell on this issue because Stamey admitted that Bell promoted no one to Chief Service Advisor during this period.

Stamey argues that Bell's replacement of her with a Chief Service Advisor, younger than Stamey and transferred from another office, should suffice for the 180-day requirement. Bell responds that this Stamey's replacement was already a Chief Service Advisor and thus, was not "promoted".

The formalism Bell urges in the construction of the 180-day rule runs counter to the remedial scheme of the Act. Stamey, a Service Advisor, was replaced with a Chief Service Advisor. This upgrading of her position is plainly a promotion opportunity. It could not be plainer that Stamey was passed over for that opportunity by being terminated. The evidence appears adequate for a jury to find that Bell denied Stamey a promotion to "Chief Service Advisor" because of her age.

22. 29 U.S.C. § 626(d)(1).

#### B. *The Trial Judge Erred In Ordered Stamey To Accept A Non-Managerial Position With Bell*

The district court ordered Stamey reinstated in a non-managerial position at a nondiscriminatory salary. Because the jury found Bell guilty of salary discrimination, but (because of the partial directed verdict) *did not* find Bell guilty of a discriminatory refusal to promote Stamey to Chief Service Advisor, this remedy is consistent with the verdict. We have found, however that the trial judge erred in directing the partial verdict for Bell. Hence, Stamey's refusal of the reinstatement Bell offered would not be "unreasonable" and her salary should not have been discontinued. We remand this aspect of the case to the district judge to determine whether Stamey at this point deserves reinstatement as a Chief Service Advisor or whether monetary damages are sufficient.

### IV.

We affirm the judgment against Bell but reverse as to Stamey's cross-appeal. Accordingly, the judgment of the trial court is AFFIRMED in part, REVERSED in part, and REMANDED for proceedings consistent with this opinion.